No. 17,477.

Kauffman, Administratrix *v.* Kauffman et al.

(278 P. [2d] 179)

Decided December 27, 1954.

Mr. C. R. Monson, Mr. Robert H. Gleason, for plaintiff in error.

584

Mr. Don Lorenz, Mr. Fred A. Videon, for defendants in error.

*En Banc.*

Mr. Justice Holland delivered the opinion of the Court.

Defendant in error James D. Kauffman, on February 20, 1950, entered into a written agreement for the purchase of 280 acres of irrigated land in Routt county from his father, Raymond C. Kauffman, now deceased. The purchase price was $5,600.00 payable $600.00 at the time of the execution of the agreement and the balance in five equal annual installments of $1,000.00 each, beginning February 20, 1951.

The agreement further provided: "In case of the death of party of the first part (Raymond C. Kauffman) all payments due on this contract shall be cancelled and deed delivered to party of the second part (James D. Kauffman) and that in case of the death of the party of the second part prior to the full payment of this contract, the party of the first part may pay to the estate of the party of the second part all payments which have been paid by him, and upon such payment this contract shall be null and void and of no effect." The agreement also provided that failure to make any one or more of said payments by party of the second part or failure in the performance of any of the covenants to be performed by the second party, the agreement may be terminated at the election of the party of the first part upon thirty days notice of intention to terminate to be given to party of the second part.

As of the same date, a warranty deed conveying the property, together with a copy of the agreement, was placed in escrow with the Routt County National Bank, the other defendant in error. This escrow agreement was signed by both parties and provided that the pay-

ments referred to in the agreement be deposited in said bank to the credit of Raymond C. Kauffman; that time was of the essence of the agreement; and in case the payments or either of them, were not promptly made and deposited the escrow papers should be returned to Raymond C. Kauffman on demand within thirty days.

Raymond C. Kauffman died August 17, 1953; plaintiff in error, Caroline A. Kauffman, was appointed administratrix of his estate; and on November 3, 1953, she caused a notice of intention to terminate the agreement to be served on James D. Kauffman. The property involved is referred to and known as the Tynan place and adjoins lands owned by the father.

On November 30, 1953, plaintiff filed his complaint against the administratrix and the bank, in which delivery of the deed held in escrow was demanded. It further is alleged that subsequent to the execution of the agreement and prior to the date of the first payment, plaintiff and deceased had entered into a verbal modification of said agreement to the effect that decedent was to have the use of the property and pay all expenses incidental to its use in lieu of the annual payments as provided. The bank filed answer in disclaimer and tendered all of the escrow papers into court for the court's disposition.

The administratrix filed her answer admitting the execution of the agreement, but alleged that it was an attempted testamentary disposition instead of a bona fide agreement. She also denied the alleged modification agreement, and further averred that the modification agreement alleged was not to be performed within one year from the making thereof; that it concerned the sale of lands; was not in writing; and was not subscribed by the deceased. An amended complaint was filed in which it was alleged that defendant had not taken any steps to declare a forfeiture of the contract and had waived any right to cancel or forfeit the same on the 17th day of March, 1954; however, this amendment was denied.

Caroline A. Kauffman, the administratrix of the estate of Raymond C. Kauffman, defendant, is the stepmother of plaintiff. Plaintiff and his family lived on the main Kauffman ranch in a house just back of the main dwelling until March 1950, when he moved to the property here involved known as the Tynan place. This place was owned by Raymond C. Kauffman, the deceased, at the time of his marriage to defendant. Plaintiff and his family moved from the Tynan place in December of 1950, apparently because of some friction between themselves and defendant, with the thought that if they were away for a time the unpleasantness might quiet down. Plaintiff continued to help his father with all of the work on the main place after he had moved with his family to the Tynan ranch. Deceased told different neighbors and friends, according to their testimony, that the Tynan place was Jim's place and he apparently never considered himself to be the owner in any sense of the word after the sale and purchase agreement. While plaintiff and his family were away, the father operated the Tynan place according to an arrangement or understanding he had with the son that the profits received by him from the operation would be in lieu of payments that were to be made under the contract. At the time of the institution of the present action no payments were in default. Defendant, at the trial, raised some question about the down payment of $600.00 not being made. Plaintiff was called in rebuttal and there was an offer of proof made to the effect that the $600.00 as recited in the contract was actually paid in cash by plaintiff on the date of the contract. This offer was rejected by the court; however, the trial court in its findings determined that the down payment was made by the vendee; further found that there was an oral agreement providing for the manner of payment of the deferred annual installments; and that the vendor would operate the ranch and credit the profits on the payments. The court further found that the installments for 1951, 1952, and 1953, with interest, had

been paid and that the vendee had performed his part of the contract; that the contract was bona fide and for a valid consideration and was not testamentary in character. It also was found that the plaintiff attempted to resume possession of the ranch after the death of the vendor, the father, but was prevented from doing so by defendant, the administratrix. It also was clearly established, and the court so found, that there was no secrecy concerning the agreement or the performance thereof; that defendant was not deprived of any of her rights; and that her claim for the widows allowance was not affected. The court found that the contract was entered into for no purpose other than as a bona fide sale of the premises; that the decedent left a large and valuable estate; and that the contract here involved, if fully carried out, would not impoverish the widow in any sense of the word, since she would receive a substantial and valuable share of the estate; and the court concluded that the deed should be delivered to plaintiff.

█ The contention that the oral modification of the terms of the payment was in violation of the statute of frauds is without merit under the circumstances of this case, since the terms of payment under the contract have been fully performed, and the statute of frauds does not operate against executed oral contracts. *Barnes v. Spangler*, 98 Colo. 407, 56 P. (2d) 31.

█ While there is undisputed testimony that the value of the land involved was far in excess of the consideration named in the contract, the contention that the consideration was legally inadequate has no merit. The consideration might seem to be inadequate in other circumstances; however, it was legally sufficient. $5,600.00 is a substantial sum which plaintiff unequivocally agreed to pay, and according to the terms of the contract, could have been forced to pay. Moreover, the consideration here involved must be viewed in a liberal light, because of the relationship between the parties and other considerations not here measured in cash. It is undisputed

that the son for a number of years, after his school days, helped his father with the entire operations of the extensive ranch holdings. Also the contract carried the provision, "In case of the death of the party of the second part prior to the full payment of this contract, the party of the first part may pay to the estate of the party of the second part all payments which have been made by him, and upon such payment this contract shall be null and void and of no effect * * *." This clause is included in the consideration clause of the contract, and it can rightfully be assumed that this provision was reflected in the contract price.

■■ At the time of the making of the contract, deceased was in good health; had a life expectancy far beyond the term provided in the contract; and the trial court was right in finding that the contract was not made in contemplation of death. The period in which plaintiff was out of actual possession of the ranch here involved was temporary and for the purpose of permitting the father to aid a son in carrying out the terms of the contract. Plaintiff, the son, took actual possession of the ranch following the execution of the contract; did everything in connection therewith that an owner would do; and spent substantial sums in the improvement thereof. Added to the fact of actual possession, when a deed from the vendor for the property involved was deposited in escrow, the vendor relinquished control and possession of the land and constructive delivery of the deed obtained. *Thuet v. Thuet*, 128 Colo. 54, 260 P. (2d) 604. The deed having been delivered in escrow, subject only to the performance of the contract by vendee, as here, it was irrevocable on the part of the grantor, and further, the grantor in the absence of default, could not forbid its delivery. The fact that the payments required of the vendee were not deposited in the bank according to the escrow agreement is immaterial, because payments were made or satisfied directly to the vendor and the vendor made no demand for return of the escrow papers

during his lifetime. The deed was without qualifications or exceptions or reservations and constituted an absolute conveyance in praesenti.

The contractual instrument here involved providing for the payment of money was not rendered testamentary in character and unenforceable because of the provision calling for payments at the time of, or after, the death of the obligor. This does not impair the contractual character or effect thereof when the instrument was supported by sufficient consideration. The intention of the parties is abundantly clear, not only from the face of the document under consideration, but by the undisputed testimony which shows that the father on many occasions referred to the ranch as "Jim's place," and other statements while the son was in possession and operating the place for him, such as, "payment on the place from Jim." This appears from disinterested witnesses.

█ The summary of the argument presented by counsel for plaintiff in error is that the contract as executed was a "colorable" transaction, testamentary in character, and not executed in compliance with the statutes provided for the execution of wills, and therefore is void. We have discussed and determined all the questions involved with the exception of the argument that the transaction is colorable. We find nothing in the record that even suggests that this transaction was colorable, because the transaction was not attended with any circumstances indicative of fraud and the other elements that make a transaction colorable, such as secrecy and deprivation of the defendant surviving wife, coupled with a retention of possession and control of the property, are wholly absent. Lacking in these elements, the transfer or contract made by deceased in his lifetime places the property beyond the reach of the surviving spouse according to numerous decisions of this Court.

In view of the facts herein related, we clearly are of the opinion that the trial court was right in its decree to

the effect that the contract was valid and subsisting; that the attempted forfeiture is without effect; that the parties are required to perform the terms of the contract; that the clerk of the court where the escrow deed was deposited should deliver the deed to plaintiff; that plaintiff be given full possession of the premises with an allowance to defendant administratrix for the crops; and that the judgment entered to that effect was, and is correct; accordingly it is affirmed.