400 P.2d 386

J. J. McLAWS and Joyee McLaws, husband and wife, Plaintiffs-Respondents,

v.

Marvella CASEY and O. G. Casey, her husband, and Nila J. Huntsman, Defendants, and also all other unknown owners, unknown heirs, unknown devisees, and all other persons unknown claiming any right, title, estate, lien, or interest in the real property described in Plaintiffs' Complaint, adverse to Plaintiffs' ownership or constituting a cloud on Plaintiffs' Title thereto, Defendants-Appellants.

No. 9435.

Supreme Court of Idaho.

March 4, 1965.

Rehearing Denied April 7, 1965.

J. I. Burgess, Burley, for appellant.

350

Parsons, Smith & Snow, Burley, for respondent.

KNUDSON, Justice.

Respondents, J. J. McLaws and Joyee McLaws, husband and wife, commenced this action seeking to quiet title to approximately 48 acres of farm land situate in Cassia County, Idaho, together with certain water shares and rights.

Joseph L. McLaws, deceased, hereinafter referred to as decedent, was a widower and the adoptive father of respondent J. J. McLaws and of appellant Marvella Casey. Said decedent also reared, but did not adopt, Nila J. Huntsman, who was originally named a party defendant in this action. During the summer of 1960 decedent became ill and during his protracted illness was cared for primarily by respondents and his foster daughter Nila. For a number of years prior to his death, which occurred December 17, 1960, decedent was the owner of the subject property which had been operated, since 1946, by his son, J. J. McLaws, on a year to year lease basis.

Respondents claim ownership of the subject property by virtue of a "Contract of Sale", hereinafter referred to as Exhibit A, executed November 1, 1960, by said decedent as vendor and respondents as purchasers, together with a deed to said property executed by said decedent on November 10, 1960 and recorded November 28, 1960, naming respondents as grantees. Appellant Marvella Casey disputes respondents' right ·to more than a two-thirds interest in the property on the basis of a deed, hereinafter referred to as Exhibit I, which was also allegedly executed and acknowledged November 1, 1960, wherein decedent is named as grantor, and respondent J. J. McLaws, appellant Marvella Casey and defendant Nila Huntsman are named as grantees. This instrument was recorded November 3, 1960. Prior to the trial of this case Nila Huntsman conveyed to respondents by quitclaim deed whatever interest she may have had in the property involved.

Following a trial before the court sitting without a jury judgment was entered in favor of respondents decreeing the deed, Exhibit I, to be void and of no effect and ordering it expunged from the records of Cassia County. This appeal is from said judgment.

Appellant contends the evidence is insufficient to sustain the trial court's finding that decedent did not intend the deed dated November 1, 1960 (Exh. I) to be a binding conveyance and that there was no delivery thereof. With the exception of some uncertainty as to the date when said instrument was executed, the evidence relating to its origin is not conflicting. The evidence shows that during late October 1960 decedent requested a close friend of his, one George Stanger, to tell J. Earl Whiteley, an unlicensed legal practitioner, that he, decedent, wanted Whiteley to make out some papers. Pursuant to such request Whiteley, after having called upon decedent,

prepared two instruments (Exhs. I and J) which on the day following their preparation were taken to decedent who signed them before Whiteley acting as a Notary Public and Stanger as a witness.

The deed (Exh. I) stated a consideration of $100, which was never paid, and in addition to usual provisions of a warranty deed contained the following language:

"Complete right of SURVISOR-SHIP is to be held by the GRANTOR herein so long as he shall live, reserving possession and reserving for the Grantor sole benefit in all rents, return and interest accruing from the Real Property herein described."

The instrument referred to as Exhibit J contains two paragraphs, the first being entitled "Statement of Appreciation", the language of which expresses gratitude on the part of decedent for the faithful and untiring devotion shown him by "Joy" Mc-Laws. The second paragraph provides as follows:

"AFFIDAVIT and SPECIAL
APPOINTMENT

"KNOW ALL ME_ BY THESE PRESENTS:

"THAT, I Joseph McLaws, of Oakley Cassia County Idaho have on this day designated, authorized and appointed—according to my wish,—Joseph Junior McLaws as Agent to care for, to supervise and to handle all Chattel and my Real Property holdings until such time that final disposition of such holdings are made in keeping with ONE CERTAIN WARRANTY Deed made executed and filed for record this day (November 1, 1960) is made.

"I further affirm that to the present day that there are no former committments, Liens or Mortgages against the Real Property recited in said Warranty Deed and therefore that I have legal right to make such disposition of it.

"IN WITNESS WHEREOF I hereunto set my hand and seal this First day of November, 1960.

JOSEPH McLAWS
Oakley Cassia Co Idaho"

Following said paragraph is an acknowledgment executed by Earl Whiteley.

During the day following the execution of said instruments decedent requested both his son and daughter-in-law (respondents herein) to get in touch with Whiteley, who had taken said instruments with him, and request him to again come to see decedent at his home. The evidence shows that such requests were communicated to Whiteley but he never saw decedent again. On the first occasion when decedent's son called upon Whiteley to request him to visit decedent, mention was made by the son of a possible sale to him of the subject property and Whiteley stated that "he (meaning decedent) could not do that."

On two different occasions thereafter when Whiteley's said statement was mentioned to decedent, he, decedent, emphatically denied it and stated that he could do anything he wanted to with his property. The record also discloses that within a day or two after decedent executed said instruments (Exhs. I and J) he inquired of his son, J. J. McLaws, if he, the son, would purchase the subject property. After some discussion and on November 1, 1960, decedent executed a contract (Exh. A) to sell the said property to respondents as purchasers for a consideration of $10,500, payable $1,000 in cash and annual installments of $1,500 each. Respondents arranged to borrow the money with which to make the down payment and pay delinquent taxes. The $1,000 down payment was made, the taxes were paid and purchasers took possession of the property. Thereafter and under date of November 10, 1960 a deed (Exh. F) was executed by decedent to respondents.

According to the testimony of Whiteley, he was requested to take the deed (Exh. I) and cause it to be recorded. The instrument shows that it was recorded at Whiteley's request and returned to him. The record is not clear as to just what happened to the instrument thereafter. However, it is clear that no delivery thereof was made to any of the grantees therein named prior to the execution and delivery to respondents of Exhibit A.

This court has repeatedly held that before a deed can operate as a valid transfer of title there must be a delivery of the instrument and such delivery must be effected during the lifetime of the grantor. Crenshaw v. Crenshaw, 68 Idaho 470, 199 P.2d 264; Williams v. Williams, 82 Idaho 451, 354 P.2d 747. It is also recognized that the intention of the grantor as to whether he intended, by the instrument, to divest himself of title is an essential and controlling element of delivery. Gonzaga University v. Masini, 42 Idaho 660, 249 P. 93; Crenshaw v. Crenshaw, supra.

The reservations specifically stated in the deed (Exh. I) and the language used in the "Special Appointment" (Exh. J) together with the subsequent execution of the Contract of Sale and deed to respondents (Exhs. A and F), and also the declarations of decedent that he could do as he pleased with the property, are inconsistent with an intent on the part of decedent to divest himself of title and control of the property described in said Exhibit I. The fact that the consideration specified was not paid; that the grantees named therein were not notified of the existence of such instrument and that the named grantees did not exercise any dominion over the property, additionally support the trial court's conclusion that decedent did not intend such instrument to pass title immediately with no right to reclaim the property.

The question of delivery was committed to the trial court for its determination and its finding thereon is abundantly supported by competent evidence and must be sustained.

The trial court found that the instrument (Exh. I) was executed prior to the date it bears and appellants contend that the court erred in making such finding. All parties concede that the instruments relied upon by appellants were executed prior to the instruments relied upon by respondents and we do not consider the exact time of execution of said instruments to be of controlling significance. The evidence supports the court's finding.

Appellants have not numerically set out their assignments of error but generally attack the judgment upon the ground that the evidence does not support the findings. One of such material findings is that the "Contract of Sale" (Exh. A) is a valid and enforceable contract.

It is uncontradicted that decedent opened the negotiations with his son which finally resulted in the preparation and execution of the contract; that decedent, at that time, contemplated returning to the hospital for care and treatment and was desirous of making arrangements for money with which to pay his expenses while there. No allegation or contention is made that fraud or undue influence was practiced by any party to it and no evidence was introduced tending to challenge the validity of its execution.

■■ It was properly noted by the trial court that paragraph 3 of the contract might be interpreted as testamentary. Said paragraph provides:

"3. Time is the essence of this agreement and sale of property and water and in the event that Seller expires, requests that purchasers pay necessary expenses and that my daughters receive a cash payment of $500.00 each and in this event I wish contract of sale to purchasers called paid in full."

It is generally recognized that the characteristics of a will and a contract are sometimes combined to some extent in one instrument. When such is the case all of the provisions of the instrument and the pertinent facts are to be considered in determining whether the writing is a contract or a will. An agreement which involves or effectuates a disposition of property belonging to a party thereto, is a valid contract and not a will, where it contemplates performance, in part at least, during his lifetime, or vests a present interest in the other party. 94 C.J.S. Wills § 140, at 920. See also In re Howe's Estate (1948), 31 Cal.2d 395, 189 P.2d 5, 1 A.L.R.2d 1171.

In In re Lewis' Estate (1940), 2 Wash.2d 458, 98 P.2d 654, 127 A.L.R. 628, the court stated:

> "The difference in effect between a contractual obligation and a testamentary disposition is that the former creates a present enforceable and binding right over which the promisor has no control without the consent of the promisee, while the latter operates prospectively, and not in praesenti and is wholly ambulatory and subject to change at the testator's wish, until his death." See also Kauffman v. Kauffman (1954), 130 Colo. 583, 278 P.2d 179.

 In the instant case, it is clear from the initial agreement (Exh. A) and the subsequently prepared and executed instrument (Exh. F) that the dominant purpose of decedent was to enter into a contract for the sale of his property on definitely expressed terms. There was consideration for the contract together with mutual performances by the parties, and there was no evidence whatever that decedent, after the execution of the contract, treated the subject property or referred to it as being wholly his. The court's findings are amply supported.

Judgment affirmed.

Costs to respondents.

McQUADE, C. J., and McFADDEN, TAYLOR and SMITH, JJ., concur.