**Helen A. JACQUEZ, Debbie Jacquez Sanchez, Inez J. Sanchez, and Lenora J. Jacquez (formerly known as Lenora J. Ortega), Plaintiffs-Appellees,**

v.

**Daniel JACQUEZ, Defendant-Appellant.**

**No. 83CA0424.**

Colorado Court of Appeals, Div. II.

Dec. 20, 1984.

Valdez & Valdez, Felix D. Valdez, La Jara, for plaintiffs-appellees.

Cross, Gaddis, Kin & Quicksall, P.C., Margaret E. Doty, Colorado Springs, for defendant-appellant.

SMITH, Judge.

In this quiet title action, defendant, Daniel Jacquez, (Daniel) appeals the judgment of the trial court declaring the proportionate interests of all parties in the subject property. We affirm.

This appeal concerns the effect of a deed and "contract" for conveyance of property on a piece of ranchland in Costilla County, Colorado. On March 22, 1963, Pablita Jacquez (Pablita) executed a warranty deed conveying the subject property to her eight children, including Daniel and his sisters who are plaintiffs herein. On the same day, Pablita also unilaterally signed a document titled "Contract." This document purportedly required each of her seven daughters to pay to Daniel $350 by December 31, 1964, and to pay her proportionate share of the property taxes each year thereafter, or forfeit her undivided one eighth interest to her brother Daniel. Pablita gave copies of the deed to most of her children. Pablita and Daniel then recorded the deed and the "contract," in that order, in the county recorder's office on April 9, 1963.

After her husband's death in 1952, Pablita had allowed all of her children to graze cattle on the ranch, a practice which continued through 1969. In 1969, however, Daniel began excluding those of his sisters who had not paid him according to the "contract." After Pablita's death in 1980, plain-

tiffs began this quiet title action to determine their respective interests in the property. Finding the contract to be unenforceable and ineffective for a variety of reasons, only one of which need be considered here, the trial court held that the deed conveyed an undivided one eighth interest in the property to each of the children, and ordered the property sold on that basis.

## I.

Daniel first contends that the trial court erred in finding that the deed had been duly delivered. We disagree.

Section 38–35–101(4), C.R.S. (1982 Repl.Vol. 16A) makes the acknowledgement and proper recording of a deed "prima facie evidence of due delivery." Once it is shown that a deed has been properly acknowledged and recorded, the burden shifts to the opponent to demonstrate nondelivery. *Carmack v. Place*, 188 Colo. 303, 535 P.2d 197 (1975); *White v. White*, 149 Colo. 166, 368 P.2d 417 (1962).

The trial court found that Daniel had not met this burden. Since this finding is supported by the record, it is binding on appeal. *Page v. Clark*, 197 Colo. 306, 592 P.2d 792 (1979).

Defendant's reliance on *Curtiss v. Ferris*, 168 Colo. 480, 452 P.2d 38 (1969), in which the grantor denied any intent to make a present delivery, is misplaced. Here, in contrast to *Curtiss*, the testimony regarding Pablita's intent in executing and recording the deed and contract, although conflicting, supports an inference of present delivery. Thus, the record supports the trial court's conclusion that Daniel had not overcome the presumption of proper delivery. *Carmack v. Place, supra; White v. White, supra.*

## II.

Daniel next contends that the trial court erred in concluding that the provisions of the "contract" concerning payment were rendered null by delivery of the deed. Again, we disagree.

Even if we assume that the document entitled "contract" had some legal effect, which issue we do not decide here, at best it was a conditional promise to convey analogous to an executory contract.

A purchaser under an executory contract for conveyance of property becomes the equitable owner of the property. *Universal Insurance Co. v. Arrigo*, 96 Colo. 531, 44 P.2d 1020 (1935); *Connecticut Fire Insurance Co. v. Colorado Leasing, Mining & Milling Co.*, 50 Colo. 424, 116 P. 154 (1911). Thus, Pablita's children became the equitable owners of the ranch upon her execution of the "contract," and upon their exercising rights of possession. By delivering the deed, Pablita vested legal title to the ranch in her children. *Kauffman v. Kauffman*, 130 Colo. 583, 278 P.2d 179 (1954). Thus, the equitable and legal estates became vested in the same persons, the two estates merged into one, and Pablita's children held title to the ranch in fee simple, free from any divesting conditions. *See Walton v. Wormington*, 89 Colo. 355, 2 P.2d 1088 (1931); *Fassett v. Mulock*, 5 Colo. 466 (1880); 1 American Law of Property §§ 4.40 and 4.41 (1952).

Daniel's argument that the contract and deed must be read together to determine Pablita's true intent misconstrues the legal basis of the trial court's ruling. Reading the "contract" and deed as a single document does not bar operation of the property law doctrine of merger. *See American Law of Property, supra,* at § 4.40. Daniel's reliance on exceptions to the contract law doctrine of merger is thus misplaced. The covenants in the "contract" being extinguished by the merger of the equitable and legal estates, Daniel has no basis for challenging plaintiffs' claims.

Having determined any contract rights were extinguished or merged in the deed, we need not discuss the alternative grounds on which the trial court found the contract unenforceable.

Judgment affirmed.

BERMAN and KELLY, JJ., concur.