Decided July 20, 1989

915

IN THE SUPERIOR COURT
OF THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

ARNOLD J. MESA,                    )        CIVIL ACTION NO. 88-298
                                   )
            Plaintiff,             )
                                   )
      vs.                          )        MEMORANDUM OPINION
                                   )
PRISCO TAIMANAO MANGLONA,          )
                                   )
            Defendant.             )
_____)

## THE LAND - GAGANE

This litigation concerns the determination of the rightful owner of a parcel of land on the Island of Rota in the Commonwealth. For the purposes of this lawsuit, the history of the land commences in the 1950's.

Luis M. Manglona owned a parcel of land in an area known as Sakaya. He was determined to be the owner by virtue of Title Determination 212. The Government of the Trust Territory of the Pacific Islands desired to exchange the Sakaya land for public land. Although this exchange was informally acknowledged as early as 1959, the formal exchange of land did not occur until November of 1980 (Plaintiff's Exhibit 11). In any event, as of 1980, Luis M. Manglona was the legal owner of the land, Gagane, which is the land in contention. The land is

fully described on page 2 of Plaintiff's Exhibit 11. Of special note is the fact that Gagane is an area of 14,698.26 square meters.

## THE BUYER - PLAINTIFF ARNOLD MESA

The plaintiff is the grandson of Luis Manglona and he expressed an interest in Gagane at least as early as 1980. Apparently, a close family relationship existed between Arnold and Luis although Arnold lived on Guam during the years in which the seeds for this lawsuit were planted.

Luis and his wife, Veronica, are from Rota and lived a good part of their lives there. However, Luis became ill and began to spend more time in Vallejo, California with his son, the defendant Prisco Manglona. Arnold and his wife, Jane, would take business trips to the United States twice a year and invariably, Arnold and Jane would visit Luis and his wife at Prisco's house.

In April, 1985, while on a visit, the subject of Gagane came up and Prisco urged Arnold to buy Gagane for $100,000. Luis was present during the conversation but nothing much else transpired. Later, in August of 1985 at Prisco's home on another visit by Arnold and Jane, the tempo of exhortations for Arnold to buy Gagane increased. Luis indicated a Japanese buyer wanted the property. A price of $50,000 was bandied about.

Arnold and Jane returned to Guam and shortly thereafter they telephoned and offered $25,000 for Gagane.

**917**

Luis thereafter accepted the offer and sometime in the first part of 1986, Luis came to Guam. At this time, Arnold gathered together $5,000 which he gave to Luis and promised to send the balance as soon as his loan was approved since he had to borrow funds against another piece of property he owned on Guam. (See Plaintiff's Exhibits 8 and 9). Luis returned to Vallejo and on January 31, 1986, Arnold sent $20,000 to Prisco at Prisco's address which was pursuant to the instructions previously given Arnold by Luis.

On April 10, 1986, Arnold and Jane arrived in San Francisco/Vallejo from Guam and stayed at Prisco's home. Luis, by this time, was bedridden but was mentally competent.

The next day or so [1] Arnold, with the knowledge of Prisco, approached Luis about signing a deed for Gagane which was prepared for him by the Land Commission Office on Rota (Plaintiff's Exhibit 5). Luis refused to sign, indicating he wanted more money. Arnold stated that in such a case he wanted his $20,000 back but Luis could keep the $5,000. Prisco indicated the $20,000 was still in his bank account.

Around 1:00 or 2:00 in the afternoon of April 14th, Arnold approached Luis again about whether he would sign the

---

[1] There is a dispute as to the number of days the Mesa's stayed at Prisco's home and on what day, or days, Luis indicated he wanted more money for Gagane. This is of little import in light of the court's finding that Luis did sign the deed on April 14, 1986.

**918**

deed.    After   certain   importuning   from Veronica and Luis'
grandson, Gabriel, Luis signed the deed.    Although Prisco   was
not   present at the actual signing, he knew of the execution of
the deed and dissuaded Arnold from having the deed acknowledged.

## THE LAWSUIT - PRISCO'S DEED

Unbeknownst to Arnold, Luis  signed  a  document  on
January 1,  1985  which  purportedly  gave Gagane to Prisco.
(Defendant's Exhibit C).   This document was not   delivered  to
Prisco   but kept in the private papers of Luis and it was found
after the death of Luis although Prisco knew of  the  deed  as
early  as  the first part of 1985.   At no time did Prisco tell
Arnold of Exhibit C until after Prisco "recorded" the  document
in October of 1987.[2]/

Thus,  the  stage was set for this litigation.  Prisco
claims the land from the 1985 deed of gift which  predates  the
unrecorded  deed of sale for which Arnold paid $25,000 - $20,000
of which remains in Prisco's bank account.

## THE ISSUES

A.    Plaintiff's Deed - Is it sufficient?

The defendant asserts that Plaintiff's Exhibit 5,   the
deed  of sale from Luis to Arnold, is fatally defective because
of the failure to adequately describe the property known as

---

[2]/
Defendant's Exhibit C is not acknowledged.  This is  a
prerequisite  to  recording.  1 CMC § 3712.   The document does
bear a recorder's stamp and recordation number however.

Gagane. What the plaintiff is attempting to do, so it is argued, is to reform the deed and this is barred by the parol evidence rule. Cited in support of this claim is <u>Guerrero v. Norita</u>, 1 CR 929 (1984). 23 AmJur2d, <u>Deed</u> § 310.

The defendant misses the mark.

A property description in a deed is adequate if it contains sufficient information to permit identification of the property to the exclusion of all others. <u>Peterson v. Taylor</u>, 735 P.2d 1120, 1123 (Mont. 1987). The description of property in a deed is adequate if the property referred to can be identified with certainty by the aid of extrinsic evidence. <u>Hewitt v. Glaser Land & Livestock Co.</u>, 626 P.2d 268, 269 (Nev. 1981). It is sufficient if the description in the deed furnishes a means of identification of the land or a means by which the property conveyed can be located. <u>Hughes v. Meem</u>, 371 P.2d 235, 238 (N.M. 1962).

Generally, courts will construe deeds in such a manner that will uphold validity of the conveyance if possible. <u>Vigil v. Sandoval</u>, 741 P.2d 836, 838 (N.M.App. 1987). The paramount rule of construction of deeds is to give effect to the intention of the parties. <u>Chournos v. D'Agnillo</u>, 642 P.2d 710, 712 (Utah 1982).

Exhibit 5 describes the property as: "T.D. No. 212, containing an area of 14,698.26 square meters." It is true that T.D. 212 was the original title determination for the property of Luis in Sakaya.

**920**

But to accept defendant's argument would mean that Luis and Arnold went through a useless act, i.e., Luis deeding property to Arnold which the former had deeded away to the Trust Territory Government many years previously. Based on the many conversations and negotiations, the intent of Luis and Arnold to deal with Gagane is clear. The specification of the amount of square meters to the one-one hundredth, as described in the deed, undoubtedly refers to Gagane. The term "T.D. 212" was obtained by Arnold from the Land Commission on Rota (Plaintiff's Exhibit 12) which uses the original title determination number to pinpoint the property. Lastly, the defendant used the exact same description in his power of attorney (Plaintiff's Exhibit 14) for having his relative assist him in prosecuting his claim to Gagane.

All the testimony and circumstances in this case leave no doubt that the property conveyed in the deed of sale from Luis to Arnold was Gagane - indeed it could be no other property. No defect is found in Plaintiff's Exhibit 5.

B.    Undue Influence - Or Influence Which is Due?

Undue influence is unfair persuasion by a party who is under the domination of the person exercising the persuasion or who by virtue of the relation between them is justified in assuming that that person will not act in a manner inconsistent with his welfare. Restatement (Second) of the Law, Contracts, § 177, p.490. The essence of undue influence is the subversion

921

of another person's free will in order to obtain assent to an agreement. Francois v. Francois, 599 F.2d 1286, 1289 (3rd Cir. 1979). The proper inquiry is not whether the persuasion induced the transaction but whether the result was produced by the domination of the will of the victim by the person exerting undue influence. Id. A case of undue influence is made out, in the case of a deed, where it is shown by clear and satisfactory evidence that: (1) the grantor was subject to such influence; (2) the opportunity to exercise it existed; (3) there was a disposition to exercise it; and (4) the result appears to be the effect of undue influence. Aldan-Pierce v. Mafnas, 2 CR 857, 868 (CTC 1986); 23 AmJur2d, Deeds, § 203, p.214.

As in cases alleging duress, the burden of proof in establishing undue influence is on the party making the charge. Vance v. Terrazas, 444 U.S. 252, 269, 100 S.Ct. 540, 549 (1980); 25 AmJur2d, Duress and Undue Influence, § 43.

The evidence in this case falls far short of undue influence which would fatally taint the April 14, 1986 deed of sale. For the first few days that Arnold requested Luis to sign the deed, the latter exerted his will over that of Arnold. Arnold was disappointed with Luis' response and was faced with the prospect of ending up with no property, a loss of $5,000 and a grave concern as to whether he would get his $20,000 back.

Luis, on the other hand, had received everything he had originally bargained for - $25,000. Yet, he demanded more

**922**

money and used his superior bargaining position in his attempt to have Arnold come up with more money.

On April 14th, Luis' wife and his grandson were the primary ones urging Luis to sign because, quite simply, they knew Luis had agreed to sell the property and had received the money.

The defendant claims a confidential relationship existed between Arnold and Luis but the court finds none which would result in a domination of Arnold over Luis.

It is also observed that Luis made no protest nor filed any suit to cancel the deed although he lived for approximately 11 months after he executed the deed of sale.

The court finds that none of the elements specified in Aldan-Pierce, supra, have been proven and the defendant's claim of undue influence must fail.

C. **The defendant's deed – A gift or a cloud on the title?**

The plaintiff raises two significant objections to giving any effect to the deed upon which the defendant relies.

First, it is argued that there was no delivery of the deed and therefore no gift occurred.

An effective deed requires delivery, actual or constructive, without exclusive control or recall. Kresser v. Peterson, 675 P.2d 1193, 1194 (Utah, 1984). In order for there to be delivery, the grantor must possess the present intent to

**923**

divest himself irretrievably of his property. <u>Lanhart v. Desmond</u>, 705 P.2d 338, 342 (Wyo. 1985). In order for a deed to be valid, it must definitely appear that the grantor intended to irretrievably part with control and domination over the deed and that his intention may be established from words and actions at the time of the delivery. <u>Den-Gar Enterprises v. Romero</u>, 611 P.2d 1119, 1122 (N.M.App. 1980). Before a deed can operate as a valid transfer of title there must be delivery of the instrument and such delivery must be effected during the lifetime of the grantor. <u>McLaws v. Casey</u>, 400 P.2d 386, 390 (Idaho 1965).

In this case, Prisco's deed was found in Luis' private papers at the time of his death. There is no evidence that Luis ever intended to irrevocably part with control over the deed prior to his death. This conclusion is buttressed by the fact that Luis executed another deed in favor of Arnold after he drafted Exhibit C which purported to give Gagane to Prisco. Such action does not show an intent to deliver exclusive control over the property.3/ Likewise, Luis did not deposit the deed with a third person for the purpose of delivering it to Prisco upon

---

3/
As seen, <u>infra</u>, the defendant also claims a partida occurred about nine months after Luis executed Exhibit C. This partida, ostensibly, demonstrated an intent of Luis to give Gagane to Prisco. If such an event did occur, this is further evidence of the fact that Luis.had no intention of irretrievably relinguishing control of Gagane to the defendant the previous January.

924

Luis' death. Since the Prisco deed was never delivered it did not pass title to Gagane.

Second, the plaintiff asserts that the defendant is estopped from relying on the deed as the defendant stood by idly and did not inform plaintiff of his interest.

Broadly speaking, the holder of an estate or interest in real property who stands by and remains silent with regard to his rights when he knows that another party is undertaking to sell the property to a third person, is estopped from thereafter asserting his estate or interest to the prejudice of that person unless it appears that the latter had notice, either actual or constructive, of the real condition of the title. Neslin v. Wells Fargo & Co., 104 U.S. 428, 436-38, 26 L.Ed. 802, 806 (1882); See, 28 AmJur2d, Estoppel and Waiver, § 83. As stated long ago by Lord St. Leonards: "Where a man having an interest in property stands by and sees another man dealing with that property, as owner, with another person who is ignorant of the want of title in the person with whom he is dealing, equity will bind the man who stands by." Mangles v. Dixon, 3 HL, Cas 702, 10 Eng Reprint 278. Annotations: 50 ALR 671.

Here, Prisco knew of the deed purportedly granting him title to Gagane in 1985. Yet he voiced no opposition when Luis later sold the property to Arnold. Far from standing idly by while this sale transpired, Prisco actually encouraged Arnold

**925**

to buy Gagane. As such, Prisco must be estopped from relying on the purported deed to him.

It is therefore concluded that without delivery of the deed to Prisco, no gift occurred. Additionally, even if it could be said Luis had the intent to make the gift of Gagane and satisfied the delivery requirement, the defendant is estopped from relying on the deed.

### D. The Partida - Just a Part?

The last line of defense the defendant relies on is a "partida" which purportedly occurred on September 4, 1985. Testimony and documents have been produced to demonstrate that certain members of the family were given specified parcels by Luis. Those present testified that Gagane was to go to Prisco.

However, Prisco was not at the meeting, nor was a majority of the family. In so far as meeting the basic requirements of a partida (See, Blas v. Blas, 3 T.T.R. 99) whatever occurred on September 4, 1985 was not a partida which granted Gagane to the defendant. While the three recipients of land apparently obtained a slip of paper from Luis (See Defendant's Exhibit B), it was clear that a subsequent deed was intended and in fact given to the distributees. All of the actions and conduct of Luis subsequent to September 4, 1985 are inconsistent with a partida of Gagane. As seen above, the payment of funds, the instructions for the deposit of the $20,000 and the attempt by Luis to obtain more money from

**926**

Arnold for Gagane belie the partida upon which the defendant relies.

The court finds that on September 4, 1985 the defendant was given no interest in Gagane.

It is concluded that title to Gagane shall be quieted in the plaintiff and the defendant found to have no right, title or interest therein. This Memorandum Opinion shall constitute the findings of fact and conclusion of law of the court pursuant to Rule 52, Com.R.Civ.Pro.

Dated at Saipan, MP, this _20 7th_ day of July, 1989.

_____
Robert A. Hefner, Presiding Judge