Bernice O. **TUTTLE**, Larry Tuttle, and Gary Tuttle, as Co–Trustees of Bernice Tuttle Trust, Plaintiffs–Appellees,

v.

Ruby M. **BURROWS**, Defendant–Appellant.

No. 91CA1504.

Colorado Court of Appeals, Div. II.

Nov. 19, 1992.

As Modified on Denial of Rehearing Dec. 24, 1992.

Certiorari Denied June 7, 1993.

Harlan Johnson, Lamar, Grant & McHendrie, John Dahle, Denver, for plaintiffs-appellees.

Lefferdink & Bullock, John J. Lefferdink, James R. Bullock, Lamar, for defendant-appellant.

Opinion by Judge REED.

Defendant, Ruby M. Burrows, appeals from the summary judgment quieting title in plaintiffs, Bernice O. Tuttle, Larry Tuttle, and Gary Tuttle, as co-trustees of Bernice Tuttle Trust, to certain mineral interests. We affirm.

In 1970, Bernice and W. Harold Tuttle (the Tuttles) acquired by warranty deed the surface ownership of certain real property.

The deed reserved the mineral estate to the grantors, Eugene and Sabra Curtis.

On February 25, 1974, the Tuttles agreed to purchase the mineral estate, and pursuant to the agreement of the parties, the Curtises deposited in escrow an executed warranty deed to the minerals of that date. The deed named the Tuttles as grantees. The agreement provided the deed would be delivered from escrow upon payment of the balance of the purchase price.

By a quitclaim deed made April 5, 1974, and recorded April 17, 1974, the Tuttles transferred "all the right, title, interest, claim and demand which [the Tuttles had]" in and to the property to W. Harold Tuttle Farms, Ltd., (Farm) a family corporation. The deed did not purport to sever the mineral estate from the described property.

On August 14, 1974, the balance of the purchase price required by the escrow agreement was paid. As a result, the mineral deed conveying the subsurface estate to the Tuttles was released from escrow and recorded.

In August of 1977, the Farm by its officers, the Tuttles, executed a deed of trust against the property in favor of the Travelers Insurance Company (TIC). This trust deed did not purport to reserve a mineral estate.

In September of 1980, the Farm, again by the Tuttles, executed a second deed of trust for the benefit of TIC, which instrument again did not reserve the mineral estate. The second trust deed was thereafter foreclosed, and TIC received a public trustee's deed dated and recorded December 17, 1986. TIC then conveyed one-fourth of the mineral estate to defendant here, who, by subsequent conveyance, now claims ownership of the entire mineral fee.

In February of 1990, Bernice Tuttle, by a warranty deed and by a further deed as personal representative of the estate of W. Harold Tuttle, purported to convey the entire mineral estate to the trustees of the Bernice O. Tuttle Trust. In March, the trustees commenced this action to quiet title to the minerals in the trust. Defendant answered, asserting several defenses

including estoppel, and she counterclaimed for title.

Upon counter-motions for summary judgment, the trial court concluded that the Tuttle trust should be awarded title. The trial court found, in essence, that the quitclaim deed by the Tuttles to the Farm conveyed only the surface estate because the Tuttles, at the time of its execution, had no title to the mineral estate. It held that since the mineral deed was then being held in escrow, pending the completion of sale, it did not inure to the Tuttles until it was released some four months thereafter. Consequently, the quitclaim deed was ineffective to transfer a title not vested in the Tuttles at the time of its execution.

On appeal, defendant repeats her arguments made in the trial court, contending, *inter alia,* that the trust, as successor to the Tuttles, is estopped from denying that title to the minerals passed to Farm under the quitclaim deed. We agree, as do the parties and as did the trial court, that the single operative issue on appeal is the effect of the quitclaim deed. And, under the circumstances demonstrated by this record, we determine that the quitclaim deed here did not operate to convey the mineral estate to Farm.

We initially note that, if the evidence consists solely of documents, and if the determinative question concerns the interpretation of those documents, then the issue raised is one of law. *Sentinel Acceptance Corp. v. Colgate,* 162 Colo. 64, 424 P.2d 380 (1967); *Gilpin Investment Co. v. Blake,* 712 P.2d 1051 (Colo.App.1985).

It is the rule, as the trust asserts and the trial court found, that a quitclaim deed does not convey land, but only the grantor's present interest in the land, if any. In other words, a quitclaim deed does not represent that a grantor possesses any interest at all, and it is ineffectual to pass to the grantee any title or right acquired by the grantor *subsequent* to execution. *Compare* § 38–30–116, C.R.S. (1982 Repl. Vol. 16A) *with* § 38–30–115, C.R.S. (1982 Repl.Vol. 16A). Consequently, it does not estop the grantor from asserting a title thereafter acquired. H. Fusilier, *Real Es-*

*tate Law* § 5.12 (1977). *See also Rocky Mountain Fuel Co. v. Clayton Coal Co.,* 110 Colo. 334, 134 P.2d 1062 (1943).

It is undisputed that at the time of the execution and recordation of the quitclaim deed, the mineral deed to Tuttles remained in escrow pending satisfaction of the agreed purchase price. The mineral deed was thus held in escrow upon a condition which might, or might not, be performed, and it cannot be said that payment of the full purchase price was an event certain to occur. The mineral deed thus did not convey title when deposited. *See Book v. Book,* 71 Colo. 502, 208 P. 474 (1922).

In order to pass title by deed, the instrument must be delivered to and accepted by the grantee. *Larison v. Taylor,* 83 Colo. 430, 266 P. 217 (1928). A deed in escrow, conditioned upon satisfaction or completion of some specified event, consequently cannot be delivered or become operative until the condition has been performed, and no title or estate passes until rightful delivery is made.

Consequently, no delivery of the mineral deed occurred here until August 14, 1974, when the balance of the price was paid and it was released from escrow and recorded. By this delivery, the Tuttles then became owners of the minerals, and the Farm, a separate entity, remained the owner of the Tuttles' former interest in the surface estate.

We recognize that when a deed is properly recorded, it is presumed that due delivery was made which relates back to the date of execution of the deed. Section 38–35–101(4), C.R.S. (1982 Repl.Vol. 16A). However, the presumption is rebuttable, and it may, upon proper proof, be shown that delivery did not occur or occurred at some other point in time. *See Jacquez v. Jacquez,* 694 P.2d 1292 (Colo.App.1984). Here, it is undisputed that the mineral deed was held in escrow pending full payment not made until August 14, 1974. Thus, there can be no earlier delivery than the date the deed was released from escrow.

Burrows, in support of her arguments relying upon equitable principles, argues that the Tuttles held equitable rights in the minerals when the contract with the Curtises was made and the escrow opened, which preceded the date of the Tuttle quitclaim deed. Citing *Kauffman v. Kauffman*, 130 Colo. 583, 278 P.2d 179 (1954), she contends that once the escrow was discharged, these equitable rights merged with the legal title in Tuttles, which merger must be deemed to relate back to the date of the mineral deed. We do not agree.

While it may be true that delivery of the deed to escrow by Curtis was irrevocable under the terms of the contract, delivery was still subject to Tuttles' potential default, in which case the deed would be withdrawn and returned to the Curtises, no conveyance having been effected. Thus, the deed, when placed in escrow, did not operate as an *in praesenti* transfer.

Finally, we agree with the trial court's observation that to adopt Burrows' arguments would inevitably weaken the reliability of record titles.

The purpose of the recording statute is to make titles to real property more secure, so that purchasers and encumbrances may safely rely upon the titles as they are displayed by record. Section 38–34–101, C.R.S. (1982 Repl.Vol. 16A) and § 38–35–109 (1992 Cum.Supp.).

In the case before us, an examination of the real property records on August 13, 1974, would have revealed that the Tuttles had no interest in the minerals at all. An examination of the title thereafter would have revealed the mineral deed to the Tuttles (and their later grantees), but not to the Farm, a wholly separate entity. The position urged by Burrows would render the title shown by the public records extremely questionable and make that title vulnerable to proof of the existence of interests variously effective notwithstanding recordation date.

Accordingly, we conclude, as did the trial court, that the quitclaim deed did not operate to convey an inchoate title in escrow and that the mineral estate by subsequent conveyance is now owned by the Tuttle trust.

The judgment is affirmed, and both parties' requests for sanctions on appeal are denied.

PIERCE and RULAND, JJ., concur.