## No. 13,475.

UNIVERSAL INSURANCE COMPANY *v.* ARRIGO.

(44 P. [2d] 1020)

Decided April 29, 1935.

Mr. John B. Barnard, Mr. C. Fred Barnard, for plaintiff in error.

Mr. Sam Parlapiano, Mr. Angelo Mosco, for defendant in error.

*In Department.*

Mr. Justice Holland delivered the opinion of the court.

Defendant in error, as plaintiff in the trial court, obtained a judgment, on a jury verdict, against plaintiff in error, defendant below, for loss sustained by fire and covered by an insurance policy issued by defendant, which assigns error. The parties will be mentioned herein as plaintiff and insurance company.

The policy was issued to plaintiff, through the insurance company's general agent, now the Midwest Agency, on August 7, 1929, for $7,100, covering among other items, a two story eleven room dwelling $4,500, and $1,800 on household goods, at 919 Eldorado avenue, Pueblo, Colorado. For reasons not material here, plaintiff was therein described as Josephine Perricone. Together with her husband and eight children, she had lived in the property since 1923, at which time plaintiff's husband, Joe Arrigo, under a contract of sale, had purchased the property, which was deeded to him in October, 1929. Before the issuance of the policy here involved, he had agreed to deed the property to his wife, the plaintiff; this agreement was carried out as soon as the property was conveyed to him, and plaintiff's deed was recorded November 29, 1929. Costa and Colletti, were soliciting agents for the insurance company. They visited the Arrigo home several times, and inspected the property to be insured. On one or more occasions, they were accompanied

by Weitershausen, who worked in the main office of the agency, and issued and signed policies. The three agents, were told by Arrigo that he did not yet have a deed to the property, and that he had agreed to deed the property to plaintiff. Costa and Colletti testified that Weitershausen suggested that the policy be written in the name of the wife, plaintiff. The amount of the insurance was approved by the agents. April 12, 1932, plaintiff, without notice to the insurance company, executed a deed of trust on the property for the sum of $3,000; April 29, 1932, she and her family went on a visit to California, and she was there on June 16, 1932, when a fire occurred which totally destroyed the dwelling and household goods. Proof of loss was filed with the insurance company, which refused to pay, and this suit resulted.

The insurance company has grouped its thirty-four assignments of error under nine principal contentions, and we will consider them in the order arranged.

First. That the condition of the title to the property, being in the husband of plaintiff, made the policy void at the time it was issued; which contention is based upon the following clause of the policy: "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void * * * if the interest of the insured be other than unconditional and sole ownership; or if the subject of insurance be a building on ground not owned by the insured in fee simple."

Colletti, one of the soliciting agents, testified that prior to the sale of the insurance, Mr. Arrigo, plaintiff's husband, said he did not have a deed to the property; that he had a little more to pay and would have a deed in a month or so; that the deed would come to himself, and that he had promised to transfer the property to plaintiff; that he and Costa went back again and the same thing was repeated to them; that they then went to the office of the company and saw Mr. Weitershausen and took him to the Arrigos, and Arrigo told him the same thing; that Weitershausen said it would make no differ-

ence for a month or so, that the insurance could be written in the name of plaintiff, and he prepared the policy after he had inspected the premises. The insurance company also had notice and information on January 26, 1932, when the "change of name endorsement" was issued and attached to the policy Exhibit C, which appears in the following language, "It is hereby agreed and understood that the correct name hereunder is corrected to read Josephine Arrigo, instead of as written."

■■ The information given to and obtained by the agents concerning the facts about the title, was in connection with the subject matter of their agency, and such notice of the facts, was constructive notice to the insurance company. The husband was the holder of a contract to purchase and was in possession. He had an equitable title which contemplated full ownership, and this was an estate in fee simple, while the title was an equitable one. This met the "unconditional and sole ownership" clause of the policy and was within its meaning. *Connecticut Fire Insurance Co. v. Colorado Co.*, 50 Colo. 424, 116 Pac. 154.

■ Second. The insurance company contends that Costa and Colletti should not have been allowed to testify concerning conversations with plaintiff and her husband, before their agency had first been proven. Under the undisputed facts, section 2491, subsection 9, C. L. '21, would seem to dispose of this contention. It is: "Any person who shall solicit and procure an application for insurance shall, in any controversy between the parties to the contract, * * * be held to be the company's agent, whatever conditions or stipulations may be contained in the policy or contract." Besides, the policy, Exhibit C was countersigned by Weitershausen who was connected with Costa and Colletti, agents, and counsel for the insurance company does not deny the agency.

■ Third. The third contention is that the court admitted improper evidence in plaintiff's behalf, concerning the value of the property destroyed, and defend-

ant objects particularly to the testimony of plaintiff's husband in that respect. He did not qualify as an expert on values, neither did he attempt to do so. He had bought the property, lived in it for several years, improved it, and was a competent witness. In considering the weight to be given his testimony, his lack of experience may be considered. However, the value placed on the property in 1929 was accepted and approved by the agents of the company for insurance purposes.

Fourth. Defendant says that the act of plaintiff in placing an encumbrance on the property without notice to it, voided the policy, and it relies upon the following condition found therein: "This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof." It says this was not a misrepresentation, but the concealment of a material fact. The encumbrance was placed on the property nearly three years after the date of the policy. So it follows there could have been no concealment when the policy was issued. The mortgage provision of the policy, is: "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy; * * * or if the subject of insurance be personal property and be or become incumbered by chattel mortgage; or if, with the knowledge of the insured, foreclosure proceedings be commenced or notice given of sale of any property covered by this policy by virtue of any mortgage or trust deed. * * *" The subject of insurance in the instant case is a dwelling and furniture, and the encumbrance is a deed of trust on realty. The insurance company could have provided by its policy, that the policy would be void in the event the realty was encumbered without notice, but it did not do so. That it never contemplated such a claim as is now

made is evidenced by the courtesy addition to its policy, in anticipation of what might happen in the way of encumbrances, just as here, to be found at the end of the policy, as follows: "Note—To secure Mortgagees, if desired, the Policy should be made payable on its face to such mortgagee as follows: Loss, if any, payable to John Doe, Mortgagee."

The other contentions deal with instructions given and refused, and the matter of excessive verdict. We have examined the instructions given, and feel that the jury was fully and fairly instructed and no error was committed in the refusal of any tendered instruction. It will serve no useful purpose to discuss these matters at length or further. We believe the judgment to be reasonable and just, and it is therefore affirmed.

MR. CHIEF JUSTICE BUTLER and MR. JUSTICE BOUCK concur.