In re the MARRIAGE OF Tim A. PLUMMER, Appellee,

and

Olive C. Plummer, Appellant.

No. 84CA1122.

Colorado Court of Appeals, Div. III.

Oct. 31, 1985.

Richard O. Pittam, Denver, for appellee.

David A. Senseney, Englewood, for appellant.

METZGER, Judge.

In this dissolution of marriage action, Olive C. Plummer (wife) appeals from the permanent orders entered by the trial court with respect to property division and visitation. We reverse and remand for a new trial on those issues.

## I.

Wife contends that the trial court erred in allowing the husband to testify concerning the value of wife's separate properties in Missouri. Husband argues that, since § 14–10–113(1)(d), C.R.S., defines "marital property" as including an increase in value of a spouse's separate property, he should be considered as an "owner" and thus able to testify as to the properties' values. We agree with wife.

An owner may state his opinion of the value of his own property without being qualified as an expert witness; however, the opinion must be based upon proper considerations. *State Department of Highways v. Pigg,* 656 P.2d 46 (Colo.App. 1982); CRE 701. It must be shown that he had the means to form an intelligent opinion, derived from an adequate knowledge of the nature, kind, and value of the property in controversy. *City & County of Denver v. Hinsey,* 177 Colo. 178, 493 P.2d 348 (1972).

Here, husband's testimony was the only evidence of the properties' values. Husband testified that he had a "general idea as to the property values in Springfield, Missouri." He stated that he had looked at certain unnamed books which contained valuations of properties located in Springfield. Husband further stated that he did have some personal knowledge of one of the residences, but had not entered the second property, and that his knowledge of the inside of the second property was limited to a description of its interior by his mother-in-law.

The rationale underlying an owner being allowed to testify as to the value of his own property without being qualified as an expert is that an owner has extensive knowl-

edge of the property and a heightened awareness as to its value. *See City & County of Denver v. Hinsey, supra.* Here, husband had neither the personal knowledge of the properties in question nor an owner's continuing interest in the value of the properties.

■ While husband had an "interest" in the increase in value of wife's properties, this limited "interest" did not automatically qualify him to give an owner's opinion of the value of the underlying properties. And, as to the underlying properties, husband had no ownership interest since the court had no power to award the properties to husband, *see* § 14–10–113(1), C.R.S., nor could it compel their sale. *See In re Marriage of Campbell,* 43 Colo.App. 72, 599 P.2d 275 (1979).

Furthermore, husband's testimony concerning the value of the properties was based on secondary sources of information and, thus, was without probative value. Consequently, the trial court erred in permitting that testimony and in using it as the basis for determining the value of the properties.

## II.

Next, wife contends that the trial court erred in its permanent orders for visitation. We agree.

■ Visitation orders are within the sound discretion of the trial court. *In re Marriage of Mann,* 655 P.2d 814 (Colo. 1982). But, that discretion must be exercised in consonance with the public policy "to encourage frequent and continuing contact between each parent and the minor children of the marriage" after dissolution. Section 14–10–124(1), C.R.S. (1984 Cum. Supp.). Section 14–10–129(1), C.R.S., specifically encourages liberal visitation by the non-custodial parent, limited only by careful consideration of the child's best interests. *See In re Marriage of Adamson,* 626 P.2d 739 (Colo.App.1981).

The trial court ordered "liberal and reasonable visitation" between the wife and the parties' 15-year-old son "to include a minimum of meeting at a restaurant for breakfast over a weekend or meeting for lunch during the week each and every week." In so ordering, the trial court adopted husband's desire for negligible defined visitation, and gave as the reasons for its decision that it was reluctant to force visitation upon a young adult and that it wished to allow mother and son to settle their own differences.

If the evidence shows the parties' willingness to cooperate in visitation, then an order for "reasonable and liberal visitation" is sufficient to comply with § 14–10–124, C.R.S. However, where, as here, the evidence shows a total lack of cooperation in visitation, a general visitation order does not meet the purposes for which visitation is intended.

■ Under the circumstances of this case, the order constituted an abuse of discretion because it was based on insufficient evidence. Father and mother both testified that visitation had occurred only once or twice during the four months preceding the permanent orders hearing. There is no evidence as to why the son refused to visit his mother, but the record shows that the trial court would not interview the son pursuant to § 14–10–126, C.R.S., to determine his wishes even though the son was available in the courthouse during the hearing. The father testified that he would leave it solely up to the son to choose the time and manner of visitation in the future.

Given these facts, the visitation order was, in essence, a nullity. A visitation order must promote a healthy relationship between a child and parent. There is no evidence to indicate that the visitation order here would achieve this purpose, or, indeed, that it was compatible with the lifestyles of either the mother or the son.

Consequently, we conclude that, given the age of the son and the lack of visitation in the past, the trial court abused its discretion. Its refusal to interview the son and to fashion a visitation order that would promote a good parent-child relationship

that was fair to the parents and in the child's best interests resulted in an order which was doomed to failure from the outset. On rehearing, the trial court should conduct a new hearing on visitation, interview the son, and enter an order directed to both parents which is designed to ensure compliance by both the parents and the son.

### III.

Because the following issues may arise on retrial, we address them here.

### A.

Wife contends that the trial court erred in admitting an appraisal of the parties' personal property absent testimony of the appraiser. Husband responds that, since he agreed with the values reflected in the appraisal, it was properly admitted as his opinion. We agree with wife.

■ Husband's personal opinion as to the value of his personal property is admissible. *Frankfort Oil Co. v. Abrams,* 159 Colo. 535, 413 P.2d 190 (1966). However, the appraisal was hearsay as defined in CRE 801(a) and (c) and, thus, was inadmissible under CRE 802. Husband's adoption of its contents did not render it admissible as his personal opinion. To conclude otherwise would allow a party to circumvent the rules of evidence by allowing an appraisal to be used at trial without an opportunity for cross-examination of the appraiser under CRE 705. Consequently, the trial court should not have admitted the appraisal under these circumstances.

### B.

Wife also asserts that the trial court erred in admitting, without proper authentication, photocopies of documents pertaining to her Missouri real properties. We agree.

■ If an individual with legal custody of an official record testifies that the evidence offered is a true copy of an official record maintained in the ordinary course of business, it is admissible. *People v. Roybal,* 43 Colo.App. 483, 609 P.2d 1110 (1979). CRE 903(4) provides that a certified copy of a public record is sufficient for authentication purposes. *See also* § 30–10–103, C.R.S. (1978 Repl.Vol.12); C.R.C.P. 44(a); CRE 1005.

■ Here, the trial court admitted a copy of a general warranty deed concerning the Missouri properties. The deed was a copy, obtained by husband's father. The husband had no personal knowledge of where the deed was obtained and the copy was not certified. Consequently, there was insufficient authentication.

■ Husband argues that the deed was admissible under C.R.C.P. 43(g)(6), which states:

"There shall be no evidence of the contents of a writing itself, except ... when the original is not within the State of Colorado and the party offering such evidence has been unable, after exercise of due diligence, to obtain such original."

However, there was no evidence that a certified copy of the deed was sought, and husband could have obtained a certified copy of it with minimal effort. Therefore, husband did not meet the "due diligence" requirement of this rule. *See Askins v. Easterling,* 141 Colo. 83, 347 P.2d 126 (1959).

In light of this disposition, we need not address wife's other contentions.

The judgment as to the division of the parties' property and its provisions as to visitation are reversed, and the cause is remanded for a new trial on these matters. In the interim, the visitation order shall remain in effect.

ENOCH, C.J., and SMITH, J., concur.