**VISTA RESORTS, INC., a Delaware corporation, Plaintiff–Appellee,**

v.

**GOODYEAR TIRE & RUBBER CO., an Ohio corporation, Defendant–Appellant.**

No. 02CA1690.

Colorado Court of Appeals, Div. V.

Nov. 18, 2004.

Certiorari Denied Aug. 8, 2005.*

---

* Justice KOURLIS would grant as to the following:

Whether the trial court erred as a matter of law in admitting hearsay evidence regarding records of a nonparty which allegedly contained consumer complaints about hose manufactured by Goodyear, without determining that the alleged other incidents were substantially similar to the product failures alleged by plaintiff and were relevant to the issue of notice.

Whether the assessment of automatic treble damages under the former version of section 6-1-113, C.R.S. (2201), of the Colorado Consumer Protection Act (CCPA) violates both the procedural and substantive due process guarantees of the United States and Colorado Constitutions.

Rothgerber, Johnson & Lyons, LLP, Richard K. Clark, Michael D. Plachy, Kristin M. Bronson, Denver, Colorado, for Plaintiff–Appellee.

Ballard, Spahr, Andrews & Ingersoll, LLP, Roger P. Thomasch, Denver, Colorado; Wells, Anderson & Race, LLC, Mary A. Wells, L. Michael Brooks, Jr., Denver, Colorado; Garfield & Hecht, PC, David L. Lenyo, Aspen, Colorado, for Defendant–Appellant.

WEBB, J.

In this product liability action, defendant, Goodyear Tire & Rubber Co., appeals a judgment entered on a jury verdict in favor of

plaintiff, Vista Resorts, Inc., for breach of implied warranty, strict product liability, failure to warn, negligence, fraud, and violation of the former version of § 6–1–113 of the Colorado Consumer Protection Act (CCPA). We affirm the judgment and remand for a hearing on attorney fees.

Vista built and sold six luxury residences in Beaver Creek. The homes included similar hydronic radiant heating systems, installed by Vista or its subcontractors, which circulated heated water and antifreeze through rubber hoses in the floors. Chiles Power Supply, d/b/a Heatway Radiant Floors and Snowmelting, contracted with Goodyear to supply rubber hose for use in the hydronic heating systems, called "Entran II." Vista purchased this hose from Heatway.

When the Entran II hose leaked and caused major damage in one of the homes, the six homeowners replaced all the Entran II hose in their residences. They sued Vista, Heatway, and Goodyear.

Through a settlement agreement, the homeowners assigned all their claims against Heatway and Goodyear to Vista. On Goodyear's motion to dismiss the homeowners, the trial court substituted Vista for the homeowners under C.R.C.P. 25(c) as the sole plaintiff. Heatway filed for bankruptcy and was dismissed, leaving Goodyear as the sole defendant.

The jury found for Vista on all claims, awarding compensatory and punitive damages. Goodyear appeals two evidentiary rulings, but does not contest the sufficiency of the evidence. The trial court entered judgment for compensatory damages, trebled under the CCPA (which Vista accepted in lieu of punitive damages), attorney fees, costs, and prejudgment interest. Goodyear challenges the constitutionality of treble damages as applied, but does not otherwise contest the amount of the judgment.

## I. Assignment of Punitive and Treble Damages

■ Goodyear contends the trial court erred by allowing the jury to consider punitive damages and awarding treble damages under the CCPA because those claims were not assignable by the homeowners to Vista. We conclude the doctrine of invited error precludes our considering the merits of this contention.

■ The invited error doctrine prevents a party from inducing an erroneous ruling and then seeking to benefit by appealing that error. A party's affirmative action during litigation triggers this doctrine and usually bars appellate review of alleged error arising from such action. *Horton v. Suthers,* 43 P.3d 611 (Colo.2002).

Here, Goodyear moved for the complete substitution of Vista as the real party in interest under C.R.C.P. 25(c) and for dismissal of the homeowners under C.R.C.P. 56. Goodyear quoted from the homeowners' settlement agreement with Vista and asserted that the homeowners "assigned, transferred and conveyed *all* their interests in claims and causes of action, together with any remedies" against Goodyear. Goodyear further asserted that the homeowners should be dismissed because their continued inclusion "as straw plaintiffs ... would only be misleading and confusing." According to Goodyear, the homeowners had "ulterior motives—to pose [themselves] as injured homeowners (albeit extremely wealthy multi-home owners now more than fully compensated), or to not have a jury trial between the real parties—the developer and two manufacturers."

The homeowners opposed Goodyear's motion, noting that "joinder or substitution under Rule 25(c) does not alter substantive rights of the parties." They did not dispute that the settlement agreement assigned all their claims to Vista.

Goodyear orally argued to the trial court that it did not seek to dismiss any claims, but rather to "clean up the caption" of the case. The court asked, "So there's no sub rosa purpose?" Goodyear answered, "No."

In granting Goodyear's motion under C.R.C.P. 25, the court explained, "I also want the record to be made clear, though, in case I'm not here, that the individual homeowners' claims remain intact as Goodyear concedes ... these are the claims of individual homeowners." The court denied Goodyear's C.R.C.P. 56 motion.

At the time of Goodyear's motion, the pleadings included claims for punitive damages and treble damages under the CCPA. Goodyear did not raise the assignability issue in the trial management order. Nevertheless, Goodyear challenged assignability of these damage claims in its motion for a directed verdict.

Even if the trial court erred in treating these claims as assignable to Vista, Goodyear induced this error through its motion and supporting argument to substitute plaintiffs. Therefore, Goodyear is precluded from arguing on appeal that this assignment did not transfer claims for punitive damages and treble damages.

## II. Other Incident Evidence

■ Goodyear next contends the trial court erred by permitting Vista to introduce evidence of approximately 950 complaints about Entran II made to Heatway, despite Goodyear's hearsay and relevancy objections. We disagree.

■ A trial court enjoys substantial discretion in admitting evidence of prior incidents, and absent a clear abuse of discretion, its ruling will not be disturbed. *Morgan v. Bd. of Water Works,* 837 P.2d 300 (Colo.App. 1992). In determining whether a court abused its discretion, the appellate court should give the evidence its maximum probative value as weighed against its minimum prejudicial effect. *City of Englewood v. Denver Waste Transfer, L.L.C.,* 55 P.3d 191 (Colo.App.2002). Admissibility depends on the particular facts at issue. *People v. Arrington,* 843 P.2d 62 (Colo.App.1992).

■ Prior incident evidence may be admitted if it is offered to establish a material fact, if it is logically relevant, if it contains no inference of the opposing party's bad character, and if it does not result in unfair prejudice. *Scharrel v. Wal–Mart Stores, Inc.,* 949 P.2d 89 (Colo.App.1997).

Here, the trial court denied Goodyear's motion in limine to exclude evidence of the complaints, holding that this evidence would be admissible to prove notice and whether Goodyear acted willfully for purposes of punitive damages. However, the court did not resolve how the complaints would be proven.

At trial, Goodyear objected to documents maintained by Heatway concerning complaints that it had received. Over Goodyear's objection, Vista then elicited testimony from a Heatway officer that Heatway received 950 complaints about "hard and leaking" Entran II hose. He also testified that Heatway reported these complaints to Goodyear from 1992 through 1996, even though Goodyear ceased manufacturing Entran II in 1993.

This testimony did not include any details about the contents of the complaints, and the Heatway documents were never reoffered. However, the officer explained that he interpreted these complaints to mean the Entran II hose was defective because Heatway received very few complaints about hose supplied by Goodyear's predecessor.

### A. Hearsay

Goodyear argues that the trial court erred because the Heatway officer's testimony was inadmissible hearsay. We disagree.

Hearsay is a statement made by someone other than the testifying witness that is offered to prove the truth of the matter asserted. CRE 801(c). Subject to certain exceptions, hearsay is generally inadmissible. CRE 802.

■ Hearsay may be admitted for a nontruth purpose, such as proof of notice or willful conduct. *Bear Valley Church of Christ v. DeBose,* 928 P.2d 1315 (Colo.1996); *Schmutz v. Bolles,* 800 P.2d 1307 (Colo.1990). Reports of prior incidents offered only to establish notice are admissible because they do not purport to establish the truth of the incidents. *Schmutz v. Bolles, supra; Armentrout v. FMC Corp.,* 819 P.2d 522 (Colo.App.1991)(refusal to admit prior incidents for purposes of notice constituted error), *aff'd in part and rev'd in part,* 842 P.2d 175 (Colo.1992); *see* 5 Jack B. Weinstein, *Weinstein's Federal Evidence* § 801.11[5] (Joseph M. McLaughlin ed., 2d ed.2004).

The Heatway officer could testify about what Heatway told Goodyear regarding the complaints Heatway received. However, he

had no personal knowledge of the truthfulness of the complaints. Nor was their truth established through any other evidence. Nevertheless, because evidence of the complaints was admitted to establish notice to Goodyear, not to show the defective nature of the Entran II hose, we discern no hearsay error.

### B. Substantial Similarity

■ Goodyear next argues that the complaints evidence was irrelevant absent non-hearsay evidence showing substantial similarity between the circumstances underlying the complaints and the homeowners' claims that Entran II was defective. Goodyear points to multiple causes other than a defect in Entran II which could cause leakage, such as improper use of clamps and damage during installation. We are not persuaded.

■ Prior incidents involving other "untoward consequences" are relevant because the reports serve as notice that something may be amiss in the product. *Palmer v. A.H. Robins Co.*, 684 P.2d 187 (Colo.1984). Differences in the circumstances surrounding prior incidents bear on the weight to be given such evidence, not its admissibility. *Simon v. Coppola*, 876 P.2d 10 (Colo.App. 1993); *see* 2 John H. Wigmore, *Evidence* § 252(5) (Chadbourn rev.1979).

We reject Goodyear's assertion that some threshold of similarity must be established by nonhearsay evidence or a hearsay exception. Goodyear relies on *Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131 (Tex.2004), but cites no Colorado authority requiring nonhearsay evidence of similarity for notice or other nontruth uses.

Goodyear's argument runs contrary to authority admitting prior incidents to prove notice without requiring nonhearsay evidence of the underlying circumstances. *Compare Schmutz v. Bolles, supra, with Koehn v. R.D. Werner Co.*, 809 P.2d 1045, 1048 (Colo.App. 1990)(to rebut testimony that product was designed without safety hazards, the proponent "must demonstrate that the other accident occurred under . . . conditions the same or substantially similar to the one involved in the present case").

Other jurisdictions have admitted complaints filed in other defective product lawsuits against a manufacturer as establishing notice to the same manufacturer in the pending action. Complaints filed in other courts are hearsay and thus do not prove any of the circumstances that they allege. Nevertheless, in determining whether to admit such complaints, courts consider their specific allegations in measuring similarity. *See, e.g., Soden v. Freightliner Corp.*, 714 F.2d 498 (5th Cir.1983).

Moreover, even if similarity goes to admissibility rather than weight, here the complaints were of "hard and leaking" hose, as described by Heatway to Goodyear. Even though the underlying reasons for leakage were not proven, such complaints still raised the possibility of a design or manufacturing defect in Entran II, as Vista asserted. *See Palmer v. A.H. Robins Co., supra.*

Thus, how Goodyear responded to notice of potential design or manufacturing problems in Entran II is both material and relevant. To recover punitive damages, Vista needed to prove that Goodyear acted willfully. Section 13–21–102(1)(a), C.R.S.2004. Evidence that Goodyear continued to manufacture Entran II, despite receiving notice of potential defects, is relevant to willfulness. *See Tri-Aspen Constr. Co. v. Johnson*, 714 P.2d 484 (Colo.1986); *see also Coale v. Dow Chemical Co.*, 701 P.2d 885 (Colo.App.1985). The relevancy threshold in a punitive damages claim is satisfied if the evidence offered tends to make more probable than not the existence of any of the elements of § 13–21–102.

Accordingly, we discern no abuse of discretion in admitting this evidence.

### C. Other Nonhearsay Bases for Admission

■ Vista argues that evidence of the other complaints was also admissible to corroborate the homeowners' stigma testimony (discussed in part III), to show that giving notice to Goodyear before replacing the hose would have been futile, and to rebut Goodyear's argument that the homeowners who had not yet encountered problems acted unreasonably in replacing their heating systems. We agree in part.

The Heatway officer testified that Heatway told customers about the existence and number of Entran II complaints. This testimony was relevant to corroborate the homeowners' fears of a stigma concerning Entran II. A market perception need not be fact-based to affect property values adversely. *See City of Englewood v. Denver Waste Transfer, L.L.C., supra.*

Further, evidence of the complaints was admissible to rebut Goodyear's spoliation argument that it did not have notice of the homeowners' claims and an opportunity to inspect their homes before they removed the Entran II hose. Evidence that Goodyear did not take any action, despite Heatway's communicating many other complaints, was relevant to Vista's argument that even had the homeowners contacted Goodyear, it would not have responded.

However, the mere existence of other Entran II complaints is not relevant to the reasonableness of the homeowners' decisions to replace hose that had not yet failed. The homeowners justified their action based on concern over the high likelihood of hose failure in the future. But unless the complaints showed other instances of failure, which would require proof of truthfulness, alone they do not establish a probability of failure in the homeowners' residences. We do not address the effect of the complaints on actions of a reasonable homeowner because the homeowners did not testify that they relied on the complaints when they replaced the hoses in their homes.

Accordingly, we conclude the record supports admission of evidence concerning other Entran II complaints for these two limited purposes.

## D. Unfair Prejudice

◼ Goodyear also argues that even if testimony about the complaints was admissible, it should have been excluded as unfairly prejudicial. We disagree.

◼ CRE 403 favors the admission of evidence at trial. Because all effective evidence is prejudicial to the adverse party, prejudice requiring exclusion is limited to an undue tendency to suggest a decision on an improper basis, such as bias, sympathy, hatred, contempt, retribution, or horror. *Koehn v. R.D. Werner Co., supra.*

At trial, Vista only referred to the other complaints during a brief portion of the Heatway officer's testimony. This testimony occupied less than thirty lines of transcript during a five-week trial. Goodyear cross-examined the witness about these complaints. Moreover, although afforded the opportunity, Goodyear chose not to request an instruction limiting the purposes for which the jury could consider this evidence. *See Masters v. People,* 58 P.3d 979 (Colo.2002); *People v. Gladney,* 194 Colo. 68, 570 P.2d 231 (1977).

In its closing argument, Vista emphasized that Goodyear had notice of the problems with Entran II and argued for punitive damages on the basis that Goodyear was unresponsive to complaints. Vista's only other reference to the complaints in its closing briefly compared the existence of complaints about the Entran II hose to the lack of complaints about the predecessor manufacturer's hose.

In sum, nothing distinguishes this case from those in which other incident evidence has been admitted to show notice. *See, e.g., Palmer v. A.H. Robins Co., supra.* Accordingly, we conclude that Goodyear was not unfairly prejudiced by the admission of the other complaints evidence.

## E. Harmless Error

◼ When a trial court errs in admitting evidence, generally the error is not grounds for reversal if other competent evidence supports the jury's verdict. *Kraftco Corp. v. Charnes,* 636 P.2d 1300 (Colo.App.1981).

◼ Here, apart from testimony about the complaints, sufficient admissible evidence exists to support the verdict. Unlike in *Nissan Motor Co. v. Armstrong, supra,* the parties had the opportunity to inspect and test the hose removed from the homes. Based on those tests, Vista's experts testified to defects in design and manufacturing that caused the hose to fail.

The testimony about the complaints was not referred to throughout the trial. Vista

made a proper closing argument. The record does not suggest the jury made its decision based on an improper basis.

Accordingly, even if we were to conclude that admission of this testimony was improper, it affords no ground for reversal.

### III. Diminished Value Testimony

■ Goodyear next contends the trial court erred in permitting three homeowners to offer opinions concerning post-repair diminution in the value of their homes based on a stigma associated with Entran II, despite removal of the hose. We disagree.

■ A ruling admitting evidence will be overturned only for an abuse of discretion. *People in Interest of Yeager*, 93 P.3d 589 (Colo.App.2004).

■ Damages recoverable for injury to property that has been remediated include repair costs and post-repair diminution in value, if any. *Bd. of County Comm'rs v. Slovek*, 723 P.2d 1309 (Colo.1986).

■ An owner can testify to the value of his property without being qualified as an expert witness. *Bd. of Directors v. Calvaresi*, 156 Colo. 173, 397 P.2d 877 (1964). Although this principle is based on the belief that the owner has "extensive knowledge of the property and a heightened awareness as to its value," the owner's opinion "must be based on proper considerations." *In re Marriage of Plummer*, 709 P.2d 1388, 1389–90 (Colo.App.1985).

Here, the trial court overruled Goodyear's objection to testimony by the first homeowner, which was proffered on the basis that a lay witness can testify to "his opinion about the diminution of the value in his home." No expert witness corroborated the stigma opinions. The jury awarded Vista all the compensatory damages that it sought, which included an unspecified amount for post-repair diminution in value.

■ Initially, we reject Vista's assertion that Goodyear has not properly preserved this issue because it only objected to the opinion of the first homeowner, who had real estate experience. The trial court admitted this testimony based on the witness's status as an owner, not his real estate experience. Because this ruling definitively resolved the issue for the two latter homeowner witnesses, Goodyear was not required to renew its objection. *See* CRE 103(a); *People v. Renfro*, 117 P.3d 43 (Colo.App. No. 03CA0047, Nov. 4, 2004).

Goodyear argues that in admitting the homeowners' testimony on stigma, the trial court ignored the limitation that an owner must be shown to have "the means to form an intelligent opinion, derived from an adequate knowledge of the nature, kind and value of the property in controversy," *In re Marriage of Plummer, supra,* 709 P.2d at 1389. Thus, according to Goodyear, we should treat the issue as "whether the trial court applied the correct legal standard," *People in Interest of J.R.T.*, 55 P.3d 217, 219 (Colo.App.2002), *aff'd sub nom. People v. Martinez*, 70 P.3d 474 (Colo.2003), and conduct a de novo review. We are not persuaded.

Goodyear's reliance on *In re Marriage of Plummer, supra,* is misplaced. There, a husband was precluded from offering an opinion on the value of his wife's separate property. Furthermore, the portion of the opinion in *City & County of Denver v. Hinsey*, 177 Colo. 178, 493 P.2d 348 (1972), that the *Plummer* division paraphrased concerning "the means to form an intelligent opinion" addressed testimony of nonparty witnesses, not testimony of the property owner.

The other cases on which Goodyear relies apply the requirement that an owner's testimony must be based on proper considerations. *See Hoover v. Shott*, 68 Colo. 385, 189 P. 848 (1920)(property owner's opinion on value of growing crops destroyed by fire did not include expenses that would be incurred through harvest); *Denver Urban Renewal Auth. v. Hayutin*, 40 Colo.App. 559, 583 P.2d 296 (1978)(property owner's opinion of value relied on unconsummated offers for the property).

In contrast, here post-repair stigma is a proper consideration. *Bd. Of County Comm'rs v. Slovek, supra.* Thus, because Goodyear has not shown that the trial court applied an incorrect standard in admitting

this testimony, we review for an abuse of discretion.

Allowing the homeowners to opine on post-repair stigma is consistent with their presumed extensive knowledge and heightened awareness of the value of their homes. Goodyear's assertion that the homeowners had no other basis for their opinions on stigma goes to weight, not admissibility. *See Universal Ins. Co. v. Arrigo,* 96 Colo. 531, 44 P.2d 1020 (1935); *Denver Urban Renewal Auth. v. Berglund–Cherne Co.,* 37 Colo.App. 360, 553 P.2d 99 (1976), *aff'd,* 193 Colo. 562, 568 P.2d 478 (1977). Goodyear cross-examined the homeowners concerning their opinions. *See* 5 J. Sackman, *Nichols on Eminent Domain* at 23–25 (3d ed. 2004) ("The potential for bias of such a witness does not preclude the consideration of such testimony; it is merely a factor to be brought out on cross-examination and goes to the weight of the testimony.").

Accordingly, we discern no abuse of discretion in the trial court's admission of this testimony.

### IV. Jury Instructions

■ Goodyear next contends the trial court erred by rejecting its tendered jury instructions concerning the duties of a component-part manufacturer. We disagree.

■ Absent a showing of substantial, prejudicial error, a trial court's refusal to give requested jury instructions does not warrant reversal of a judgment. *Ajay Sports, Inc. v. Casazza,* 1 P.3d 267 (Colo.App. 2000). In determining whether jury instructions adequately inform the jury of the applicable legal principles, all instructions should be considered together. *Vikman v. Int'l Bhd. of Elec. Workers, Local Union No. 1269,* 889 P.2d 646 (Colo.1995). Thus, if the other instructions adequately inform the jury

of the applicable law, the trial court does not err in refusing a legally correct tendered instruction. *Peterson v. Tadolini,* 97 P.3d 359 (Colo.App.2004).

■ When instructing the jury in a civil case, the trial court shall use those instructions contained in the Colorado Jury Instruction (CJI) that apply to the evidence under the prevailing law. C.R.C.P. 51.1(1). The court's rejection of instructions not contained in CJI is reviewed for abuse of discretion. *Garhart ex rel. Tinsman v. Columbia/Healthone, L.L.C.,* 95 P.3d 571 (Colo. 2004). Likewise, the form of instructions is vested in the court's discretion. *See Montgomery Ward & Co. v. Kerns,* 172 Colo. 59, 470 P.2d 34 (1970).

Here, the trial court gave instructions paralleling CJI–Civ.3d 14:18 and 14:20 (1989)(renumbered as 14:1 and 14:4 in CJI–Civ. 4th (2001)), on product liability and duty to warn. Goodyear argues that these instructions were insufficient because they did not reflect the law regarding liability of a component-part manufacturer as set forth in *Bond v. E.I. Du Pont De Nemours & Co.,* 868 P.2d 1114 (Colo.App.1993), and *White v. Caterpillar, Inc.,* 867 P.2d 100 (Colo.App.1993), which were decided after publication of CJI–Civ.3d. We are not persuaded.

### A. Product Liability of a Component–Part Manufacturer

Initially, we note that the trial court's basic product liability instruction accurately reflects the elements of a component-part manufacturer's product liability set forth in *Bond,* as shown in the following side-by-side comparison. The court instructed the jury that it must find Vista proved all the following by a preponderance of the evidence to return a verdict for Vista on the product liability claim:

| **Instruction No. 27.** | ***Bond v. E.I. Dupont de Nemours & Co., supra,* 868 P.2d at 1118.** |
|---|---|
| The Goodyear Entran II hoses were defective and, because of the defect, the Goodyear Entran II hoses were unreasonably dangerous to a person or the property of a person who might reasonably be expected to use, consume, or be affected by the Goodyear Entran II hoses; | (1) The materials or component parts are in a defective condition or without a warning are unreasonably dangerous to the user or consumer; |

The Goodyear Entran II hoses were defective at the time they were sold by Goodyear; The Goodyear Entran II hoses were expected to reach the user or consumer without substantial change in the condition in which they were sold by Goodyear; The Goodyear Entran II hoses did reach the user or consumer without substantial change in the condition in which they were sold by Goodyear;

(2) The product is expected to and does reach the user or consumer without substantial change in the condition in which it is sold;

The defect in the Goodyear Entran II hoses was a cause of the [homeowners'] damages or losses;

(3) The design defect or failure to warn is the cause of the plaintiff's injury;

[no instruction because admitted by Goodyear]

(4) The defendant sold the product and is in the business of selling such products; and

The [homeowners] had damages or losses.

(5) The plaintiff sustained damages as a result.

This instruction dispels Goodyear's assertion that the jury may have been confused about whether the defect was in the Entran II hose or in the heating systems and whether the defect in the hose arose only on installation of the heating systems. This instruction clearly told the jury that it must find that "the Goodyear Entran II hoses were defective" and that "the Goodyear Entran II hoses were defective at the time they were sold by Goodyear."

From the special verdict form finding Goodyear liable for supplying a defective product, we cannot determine whether the jury concluded that Entran II contained a design or manufacturing defect as sold to Heatway or that the hose, although properly designed and manufactured, lacked an adequate warning. Vista asserted both theories of product liability. Therefore, we consider Goodyear's tendered instructions concerning its duty to warn.

### B. A Component–Part Manufacturer's Duty to Warn

■ Goodyear argues the trial court erred in rejecting its tendered instruction that a component-part manufacturer has no duty to foresee or warn of all dangers that may result from the final product. We disagree.

In addition to the basic strict product liability instruction, the trial court instructed the jury:

A product not otherwise defective in its manufacture or design becomes defective and unreasonably dangerous if adequate warnings or instructions for use are not provided. To be adequate, the warnings or instructions for use must inform the ordinary user of any specific risk of harm which may be involved in any failure to properly follow instructions when using the product for any intended or reasonably expected use. However, if a specific risk of harm would be apparent to an ordinary user from the product itself, a warning concerning that specific risk of harm is not required.

Although this instruction is not tailored to a component-part manufacturer, the comments on use in the third and fourth editions of CJI–Civ. do not encourage special instructions for component-part manufacturers. *White v. Caterpillar, Inc., supra,* provides no guidance because the opinion neither quotes nor describes the component-part manufacturer instructions given.

Goodyear tendered the following instruction regarding its duty to warn:

Defendant, Goodyear Tire & Rubber Company, contends that it supplied the Entran II hoses as a component for Heatway hydronic radiant heating systems. A component-part manufacturer has no duty to foresee all the dangers that may result from the use of a final product or system that contains its component part. This is true even if the component part manufacturer has knowledge of the design and use of the final product or system.

Goodyear supports this instruction with the statement in *Bond v. E.I. Du Pont De Nemours & Co., supra,* 868 P.2d at 1118, that:

A component-part manufacturer or raw-material supplier has no duty to foresee all the dangers that may result from the use of a final product which contains its component part or materials. *See Shaw v. General Motors Corp.,* 727 P.2d 387 (Colo.App. 1986). This is true even if the manufacturer or supplier has knowledge of the design and use of the final product. *Childress v. Gresen Manufacturing Co.,* 888 F.2d 45, 49 (6th Cir.1989) . . . .

The trial court rejected Goodyear's instruction on the basis that this language from *Bond* was dictum.

In any event, these cases involved component parts that were either expressly found or conceded to be safe for some uses, but which posed a danger because the nature of the final product created a particular risk or because the component part had been modified by the manufacturer before installation in the final product. Neither circumstance is present here.

In *Bond,* the plaintiffs conceded that Dupont's Teflon was safe for multiple uses, but argued that the Teflon jaw implants at issue were defective because the Teflon failed under the pressure and friction of the temporomandibular joint. In *Shaw,* the plaintiff argued that the General Motors chassis, which could be installed in different types of trucks, was defective because it did not have a backup alarm as delivered. The division concluded that, because the chassis would be safe without a backup alarm in many installations, General Motors had no duty to warn of the need for an alarm if a particular installation, such as the one that injured the plaintiff, impaired rear visibility.

In *Childress,* the court applied Michigan law to a case involving a hydraulic valve incorporated into a log splitter that injured the operator. The court noted the absence of any allegation that the valve was inherently dangerous as supplied to the manufacturer of the log splitter. It concluded, "in this case the valve was alleged to be misapplied rather than defectively designed." *Childress v. Gresen Mfg. Co., supra,* 888 F.2d at 49.

Here, in contrast, the evidence was uncontroverted that Goodyear sold Entran II hose only to Heatway, knew the Entran II hose would be used solely for radiant heating systems, and understood the requirements of such systems. Unlike in *Bond* and *Shaw,* Vista's use of Entran II in the heating systems did not increase the risk of the hose deteriorating and hardening, which, according to Vista, caused it to leak. Unlike in *Childress,* Heatway did not modify the Entran II hose before selling it to Vista. And Vista did not concede that Entran II could be safely used in any other applications, but instead consistently asserted that the hose was inherently defective.

On this record, we conclude the trial court did not commit substantial, prejudicial error by refusing to give Goodyear's tendered instruction on lack of a duty to foresee dangers resulting from use of the final product.

Nor do we discern error in the rejection of Goodyear's tendered instruction stating that a component-part manufacturer, without control over the design, assembly, manufacture, or distribution of the final product, has no duty to warn the consumer of danger arising from assembly of that product.

While this instruction finds some support in the language of *White v. Caterpillar, Inc., supra,* it is at odds with the broad statement in *Union Supply Co. v. Pust,* 196 Colo. 162, 170, 583 P.2d 276, 281 (1978), adopting the "majority view that a manufacturer of component parts may be held strictly liable for injuries to a consumer caused by design defects in the component parts when they are expected to and do reach the consumer without substantial change in condition." Further, Goodyear did not dispute that it participated with Heatway in matching Entran II to the design requirements of hydronic heating systems.

Accordingly, we conclude the trial court properly rejected Goodyear's tendered jury instructions on its duty to warn.

### C. Other Component–Part Manufacturer Instructions

We also reject Goodyear's argument that the trial court erred in rejecting three additional instructions regarding component-part manufacturers.

Goodyear tendered an instruction stating that compliance with the manufacturer's specifications for the final product may be considered in determining whether a component part is defective, citing *Littlejohn v. Stanley Structures, Inc.*, 688 P.2d 1130 (Colo. App.1984), and *Union Supply Co. v. Pust, supra.* However, these cases do not support this instruction on the facts before us.

In *Littlejohn, supra*, a construction worker was injured when he mistook a plywood board covering a large hole as a mortar board, removed the plywood board, and fell through the hole. The plaintiff admitted that he was aware of the specific danger posed by the unfastened board. Here, the homeowners did not concede that they were aware of any specific danger posed by the Entran II hose.

In *Union Supply Co., supra*, the court's analysis focused on which of several defendants was responsible for the design of the conveyor system that injured the plaintiff. Here, the record shows the Goodyear and Heatway jointly developed the design requirements for Entran II.

Goodyear also tendered an instruction stating that a component-part manufacturer is entitled to assume that the consumer will follow warnings provided by the manufacturer of the final product, and if the consumer fails to do so, then the component-part manufacturer is not responsible for resulting damages, even if the failure was foreseeable. The cases Goodyear cites, *Koehn v. R.D. Werner Co., supra*, and *Uptain v. Huntington Lab, Inc.*, 723 P.2d 1322 (Colo.1986), are inapposite.

In *Koehn*, the plaintiff was injured when she fell from a stepladder on which a label warned of potential misuse. The court gave an instruction that where a warning is given, the defendant is entitled to rely on the warning being followed. In *Uptain*, the court rejected the plaintiff's assertion that her failure to read warning labels printed on a bottle containing material which injured her was foreseeable as a matter of law.

Neither of these cases involved a claim against a component-part manufacturer. Here, Goodyear does not point to any warnings that the homeowners or Vista failed to follow. And Vista did not assert Goodyear's liability on the basis that the homeowners' failure, if any, to follow warnings provided by Heatway was foreseeable.

Goodyear also tendered an instruction defining a component part. However, this instruction is not based on any legal authority. Moreover, the trial court acknowledged Goodyear's status as a component-part manufacturer.

### D. Negligence and Negligent Failure to Warn Claims

Alternatively, Goodyear argues that, even if instruction no. 27 adequately described a component-part manufacturer's strict liability for selling a defective product, its tendered instructions were necessary because of the different legal principles governing Vista's negligence and negligent failure to warn claims. We are not persuaded.

Here, as in *Union Supply Co. v. Pust, supra*, and *Bond v. E.I. Du Pont De Nemours & Co., supra*, Vista used the same evidence to establish its negligence and strict liability claims. Goodyear does not challenge any of the negligence or negligent failure to warn instructions. Hence, for the reasons previously discussed, we conclude that the negligence and negligent failure to warn claims did not require the trial court to give Goodyear's tendered instructions.

### E. Theory of the Case

Nor are we persuaded that the trial court's rejection of these tendered instructions deprived Goodyear of an instruction on its theory of the case.

A party is entitled to an instruction on its legal theory when the instruction is consistent with existing law and supported by the evidence. *Cmty. Hosp. v. Fail*, 969 P.2d 667 (Colo.1998); *Hansen v. State Farm*

*Mut. Auto. Ins. Co.*, 957 P.2d 1380 (Colo. 1998); *Trione v. Mike Wallen Standard, Inc.*, 902 P.2d 454 (Colo.App.1995). It should succinctly explain the party's view of what the evidence shows; it should be general and brief; and it must instruct the jury on the legal effect of the explanation. *People v. Meads*, 58 P.3d 1137 (Colo.App.2002), *aff'd*, 78 P.3d 290 (Colo.2003). A trial court may refuse to give a theory of the case instruction that misstates the law, is argumentative, or improperly emphasizes specific evidence. *People v. Smith*, 77 P.3d 751 (Colo.App.2003).

Here, the jury was instructed that "Goodyear denies all of the claims asserted by Vista" and was informed of Goodyear's affirmative defenses.

Moreover, for the reasons previously discussed, Goodyear's tendered instructions do not reflect the law applicable to the evidence presented. Thus, Goodyear was not deprived of a correct instruction on its theory of the case.

Accordingly, we conclude the trial court properly rejected all Goodyear's component-part manufacturer instructions.

## V. Due Process

Goodyear contends the treble damages provision of the CCPA violates its substantive and procedural due process rights under the Colorado and federal constitutions. We disagree.

■ Statutes are presumed constitutional. The party challenging the constitutionality of a statute has the burden of proving unconstitutionality beyond a reasonable doubt. *Anderson v. Colo. State Dep't of Pers.*, 756 P.2d 969 (Colo.1988).

Under the former version of the CCPA, a claimant was entitled to receive either treble damages or $250, whichever sum was greater. Colo. Sess. Laws 1987, ch. 42, § 6–1–113(2)(a) at 360 (amended effective May 18, 1999).

### A. Procedural Challenge to Unconstitutionality Claim

■ Vista asserts that Goodyear did not properly preserve its constitutional challenge by failing to raise the issue in its answer as an affirmative defense under C.R.C.P. 8(c) and by failing to give proper notice to the supreme court under C.A.R. 44(a). We disagree.

Trebling under the CCPA occurs as a matter of law after the verdict only if the jury finds a CCPA violation. Therefore, the trial would not have proceeded differently even if Goodyear had pleaded unconstitutionality as an affirmative defense. We agree with Goodyear that the issue of constitutionality was not ripe until the jury returned its verdict and the court imposed CCPA treble damages at Vista's request, in lieu of punitive damages awarded by the jury. Furthermore, Vista addressed constitutionality in its response to Goodyear's C.R.C.P. 59(a) motion for post-trial relief. Therefore, we conclude Goodyear properly preserved the issue.

■ Where, as here, a party raises a constitutional challenge to a state statute, and neither the state nor a state agency is a party, the challenging party must give "immediate notice" to the supreme court under C.A.R. 44(a). No appellate case resolves whether this rule requires notice of a constitutional challenge as applied or determines the consequences of failing to give immediate notice.

Goodyear gave notice on March 9, 2004, after its opening brief and Vista's answer brief were filed. The attorney general filed an amicus brief on April 2, 2004.

Goodyear asserts that its challenge to the CCPA is only as applied, and therefore, notice under C.A.R. 44(a) may not be required. Even assuming that notice was required, Goodyear's notice to the supreme court afforded the Attorney General an opportunity to respond. Therefore, because no harm resulted from Goodyear's delayed notice, and in the absence of contrary authority, we conclude the issue is properly before us. *Cf.* C.A.R. 3(a) ("Failure of an appellant to take any step other than the timely filing of a notice of appeal in the appellate court does not affect the validity of the appeal ....").

### B. Procedural Due Process

We reject Goodyear's contention that the lack of trial court discretion not to treble a damage award under the CCPA violates its right to procedural due process.

Goodyear relies primarily on four United States Supreme Court cases: *State Farm Mutual Automobile Insurance Co. v. Campbell,* 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003); *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996); *Honda Motor Co. v. Oberg,* 512 U.S. 415, 114 S.Ct. 2331, 129 L.Ed.2d 336 (1994); and *Pacific Mutual Life Insurance Co. v. Haslip,* 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991). Goodyear's reliance is misplaced because all these cases involved unfettered jury discretion in awarding punitive damages, not statutory damage multipliers.

Goodyear first argues that treble damages should be imposed only for intentional misconduct, but the CCPA uses a negligence standard. Goodyear cites no constitutional authority limiting statutory damage multipliers to cases involving intentional misconduct, and we have found none.

Moreover, the jury found Goodyear liable for fraud as well as for having engaged in deceptive trade practices, based on evidence of the same acts and omissions. Because Goodyear concedes that it only challenges the CCPA as applied, we need not consider whether imposing treble damages for mere negligence would violate procedural due process.

Goodyear also argues that awarding treble damages under the CCPA based on a preponderance of the evidence standard violates procedural due process. Again, Goodyear cites no authority to support this argument. To the contrary, the Supreme Court has held that a heightened standard of proof is not constitutionally required to award punitive damages. *See Pac. Mut. Life Ins. Co. v. Haslip, supra.*

Similarly, Goodyear cites no authority for its assertion that the jury must be informed whether the trial court will award treble damages. *Cf. Heritage Vill. Owners Ass'n v. Golden Heritage Investors, Ltd.,* 89 P.3d 513 (Colo.App.2004)(holding the jury need not be informed of treble damages under the current version of the CCPA, and citing cases under similar federal statutes).

### C. Substantive Due Process

We also reject Goodyear's contention that awarding mandatory treble damages under the CCPA violates substantive due process because treble damages are grossly disproportionate to the severity of the offense and do not have a reasonable relationship to the compensatory damages awarded.

Goodyear asserts that automatic trebling violates the requirement to consider the reprehensibility of the defendant's misconduct in imposing punitive damages. *See BMW of N. Am., Inc. v. Gore, supra.* For reasons previously discussed, Goodyear's reliance on *BMW* is misplaced. Moreover, the jury considered the severity of Goodyear's misconduct and it found Goodyear liable for fraud.

Goodyear argues that the trial court awarded grossly excessive noncompensatory damages in the form of treble damages, attorney fees, and costs under the CCPA. However, Goodyear stipulated to the amount of attorney fees and costs, which the trial court reviewed for reasonableness, and Goodyear does not appeal the amount awarded. We conclude a three to one ratio of noncompensatory to compensatory damages is not excessive per se. *See TXO Prod. Corp. v. Alliance Resources Corp.,* 509 U.S. 443, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993)(affirming punitive damages 256 times greater than actual damages awarded).

Goodyear also argues that mandatory treble damages do not bear a reasonable relationship to the compensatory damages awarded. However, because the compensatory damage award itself is trebled, the resulting noncompensatory damages will always have a direct, absolute, and understandable relationship to the compensatory damages.

Accordingly, we conclude the treble damages provision of the CCPA does not violate Goodyear's due process rights.

## VI. Equal Protection

Goodyear contends the CCPA's treble damages provision violates the equal protection guarantees under the Colorado and federal constitutions. We disagree.

Goodyear concedes that the rational basis test applies to the CCPA, because no suspect class or fundamental right is at issue. Under this test, a statute will not be found to violate equal protection if the statute is reasonable and bears a rational relationship to a legitimate state objective. *Scholz v. Metro. Pathologists, P.C.*, 851 P.2d 901 (Colo.1993). The party challenging a statute must prove beyond a reasonable doubt that the statutory classification does not bear a reasonable relationship to a legitimate legislative purpose. *Esser v. Indus. Claim Appeals Office*, 8 P.3d 1218 (Colo.App. 2000), *aff'd*, 30 P.3d 189 (Colo.2001).

The CCPA is a remedial statute intended to deter and punish deceptive trade practices committed against the public. *Showpiece Homes Corp. v. Assurance Co.*, 38 P.3d 47 (Colo.2001). It provides "prompt, economical, and readily available remedies against consumer fraud." *Coors v. Sec. Life of Denver Ins. Co.*, 91 P.3d 393, 398 (Colo. App.2003)(*cert. granted* May 24, 2004). The treble damages provision furthers the CCPA's punitive and deterrent purposes and promotes private enforcement. *Hall v. Walter*, 969 P.2d 224 (Colo.1998).

Goodyear argues that mandatory treble damages under the CCPA violate equal protection because, unlike the imposition of punitive damages under § 13–21–102, no additional findings of willfulness or bad faith are necessary. We are not persuaded.

A party raising an equal protection challenge must show that the disputed classification singles out a group of persons for disparate treatment and does not subject other similarly situated persons to such treatment. *Buckley Powder Co. v. State*, 70 P.3d 547 (Colo.App.2002). However, Goodyear does not delineate the classification on which it bases its equal protection challenge. Assuming that Goodyear's reference to § 13–21–102 implies a comparison between CCPA violators and common law tortfeasors, this classification affords Goodyear no relief. The jury found Goodyear liable for fraud as well as deceptive trade practices and awarded punitive damages under § 13–21–102.

Moreover, even if CCPA violators and common law tortfeasors were similarly situated, the CCPA's damages multiplier has a rational basis. Under the CCPA, a plaintiff must prove both that the defendant engaged in deceptive trade practices, which Goodyear equates to common law fraud, *and* that those practices had a substantial public impact. *See Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142 (Colo.2003). This additional element, not required to prove common law fraud, offers a rational explanation for the state's protecting the public by providing for a mandatory treble damages award.

Accordingly, we conclude the CCPA treble damages provision does not violate Goodyear's right to equal protection.

## VII. Cumulative Error Doctrine

Finally, Goodyear contends the cumulative effect of the trial court's errors prevented a fair trial and therefore, Goodyear is entitled to a new trial. We disagree.

The cumulative error doctrine applies to criminal actions and is derived from a defendant's due process right to a fair trial. U.S. Const. amend. VI; Colo. Const. art. II, § 16; *see People v. Phillips*, 91 P.3d 476 (Colo.App. 2004). Even assuming this doctrine applies to civil actions, we have identified no individual trial court errors, and thus Goodyear would not be entitled to relief under the cumulative error doctrine even as applied in criminal cases.

## VIII. Request for Attorney Fees and Costs

Vista requests attorney fees and costs on appeal under the former § 6–1–113(2)(b). This section mandates costs and reasonable attorney fees in favor of a successful CCPA claimant. Therefore, we remand under C.A.R. 39.5 for the trial court to determine the reasonable amount of attorney fees and costs incurred during this appeal.

The judgment is affirmed, and the case is remanded for an award of attorney fees and costs.

Judge HUME and Judge PLANK concur.